From these views it will be seen that the evidence offered as to the actual value of the property sold was, as the referee decided, wholly immaterial.

The judgment must be affirmed with costs.

All for affirmance, except HUNT, C., who did not vote.

Judgment affirmed with costs.

SAMUEL W. PRICE, Respondent, *v.* RICHARD HARTSHORN, Appellant.

Where a jettison becomes necessary, for the preservation of the remainder of a cargo, by reason of a violent storm, the loss is by act of God, although occasioned through the immediate agency of men.

In order to extend the liability of common carriers to such a loss, there must be an express agreement, unequivocally and necessarily evincing that such was the intention of the parties.

The provision in the bill of lading, "damage or deficiency in quantity specified, if any, to be deducted from charges by consignees," does not express a warranty of safe delivery, or a special contract extending the

liability of the carrier, but refers to any damage or deficiency resulting from his default or negligence.

The opinions of experts as to the necessity of a jettison are competent.

The plaintiff, a common carrier, received a cargo of barley, under bills of lading specifying: Shipped ·in good order, to be delivered in like good order at the place of destination, as consigned, without delay; damage or deficiency in quantity specified, if any, to be deducted from charges by consignees; freight payable on delivery. In the course of his voyage he was overtaken by a violent storm and compelled to throw overboard a portion of the cargo, in order to save the residue and the boat.—*Held*, that he was entitled to recover freight upon the amount delivered, without any deduction on account of the loss so occasioned.

(Argued September 24th, decided December 28th, 1870.)

APPEAL from a judgment entered upon the order of the General Term of the Supreme Court, in the fourth district, affirming a judgment for the plaintiff entered upon the report of Hon. Artemas B. Waldo, referee.

This was an action for freight on the transportation of a quantity of barley by the plaintiff on a canal boat of which he was master, from St. Johns, in Canada, to New York. The following facts were found by the referee before whom the action was tried, viz.: In October, 1862, the plaintiff was engaged in running a canal boat as master thereof, from St. Johns, in Canada, to New York city. On the 8th day of that month, he took on board of his boat, at St. Johns, 5,749$\frac{38}{48}$ bushels of barley, 1,749$\frac{38}{48}$ bushels thereof in the name of Theodore Arpin as consignor, consigned to order, New York, and indorsed to the defendant, and 4,000 bushels thereof in the name of George H. Taylor as consignor, and the defendant as consignee at New York. On such shipment the plaintiff executed in triplicate bills of lading for each parcel, each of which bills of lading, among other things, contained the following provisions: That said property was shipped in good order, to be delivered in like good order by correct measure or weight in the customary way (weight calculated by average or otherwise) at the place of destination as consigned, without delay, damage or deficiency in quantity, if any, to be deducted from charges by consignees;

freight payable on due delivery at the rate of eleven cents to New York. Theodore Arpin, one of the consignees, had charge of the shipping of the barley and was present when it was loaded on board the plaintiff's boat. The hold of the plaintiff's boat was filled and a large quantity besides put on deck. The quantity carried on deck was carried in two bins, one at each end of the boat. Arpin made no objection to the grain being put into the bins, nor to the loading on deck. The boat was not loaded beyond her capacity, but had on a heavier load than she could carry through the Champlain canal; and she was in good sailing condition. The plaintiff, after leaving St. Johns with said cargo, and while in the line of his route passing through Lake Champlain, on the night of the 20th of October, was overtaken by a great storm, which continued during the 21st day of October. By reason of the extreme violence of this storm, the plaintiff was compelled, in order to prevent the loss of the boat and cargo, to throw overboard a portion of the barley in the bins, and did throw overboard 1,243$\frac{9}{48}$ bushels then, in order to lighten his boat, which barley was not lost by reason of any neglect or mismanagement of the plaintiff in the navigation of his boat, after the commencement of his voyage. The plaintiff delivered the remainder of the barley, except what was cast overboard as above stated, to the defendant at New York, early in the month of November, 1862, and the same was received by him. The amount so delivered was 4,586$\frac{33}{48}$. Neither party on the trial gave any further evidence as to what took place on the delivery of the cargo. The defendant has not paid the plaintiff any sum whatever. The referee found, as conclusions of law from the foregoing facts, that the defendant was liable to pay the plaintiff the freight agreed upon per bushel, for the barley actually delivered, and interest thereon from the time of delivery; that the freight amounted to the sum of five hundred and four dollars and fifty-two cents ($504.52), and the interest thereon up to the date of his report to $75.07, making the whole indebtedness $579.59, for which he was entitled to judgment.

Judgment was entered in conformity with such conclusion of law, and on appeal was affirmed by the General Term. The case below is reported in 44 Barbour, 655.

*Wait & Reynolds*, for the appellant, insisted that the bill of lading made a special contract. That under it, delivery was a condition precedent to right to freight, and delivery of a part did not entitle plaintiff to recover. (*Phelps* v. *Williamson*, 5 Sandf., 578.) Common carriers may thus limit or increase their liability. (*Dore* v. *New Jersey Nav. Co.*, 1 Kern., 485.) There being an absolute engagement, inevitable accident does not excuse performance. (*Harmony* v. *Bingham*, 2 Kern., 99, and cases cited on p. 115 ; Platt on Cov., 582 ; Story on Cont., § 668 ; Story Eq. Jur., § 101 ; *Graves* v. *Berdan* 29, Barb., 101.) Parol evidence is inadmissible to contradict or qualify the bill of lading. (*White* v. *Van Kirk*, 25 Barb., 18 ; 1 Greenl. Ev., 277.) The loss resulted from overloading. (Story on Bailm., § 413.)

*Samuel Hand*, for the respondent, urged that the loss was by act of God. (Story on Bailm., §§ 525, 531 ; *Gravesend Barge Case*, 1 Rolle. R., 79, pl., 23 ; *Bird* v. *Astock*, 2 Bulst., 280 ; Cowen, J., in *McArthur* v. *Sears*, 21 Wend., 190, 195 ; *Cochran* v. *Cleopatra*, 17 La. Ann., 270.) And the carrier's liability the same as if " perils of the sea," were expressly excepted. (*Crosby* v. *Fitch*, 12 Conn., 410, 419 ; Story on Bailm., §§ 25, 512 ; 1 Kent. Com., 826 ; *Hays* v. *Kennedy*, 41 Penn. St., 379 ; Abbott on Ship., 5 Am. Ev., 470 ; Angell on Carr., § 166.) The freight was payable per bushel, and, in case of justifiable loss, can be recovered on the part delivered. (Abbott on Ship., 523 ; *Frith* v. *Barker*, 2 John., 327 ; *The Brig Collenburg*, 1 Black., 170 ; *Ritchie* v. *Atkinson*, 10 East, 295. 310.) Performance is always excused when rendered impossible by act of God. (1 Co. R., 98, a5 ; id., 21 b. ; Cro. Eliz., 398 ; *Williams* v. *Lloyd*, Jones R., 179 ; *Wood* v. *Bates*, id., 171 ; Viners Abr., Title conditions, G. c., pl. 1, 19 ; Story on Bailm., § 36 ; *People* v. *Manning*, 8 Cow., 297 ; *Carpenter* v. *Stevens*, 12 Wend., 589 ; *Cobb* v.

*Harman,* 23 N. Y., 148, 150, LOTT, J.; *Fahy* v. *North,* 19, Barb., 341; *Wolfe* v. *Howes,* 24 id., 174; S. C. Affd.; 20 N. Y., 197; *Read* v. *Spaulding,* 5 Bosw., 396; *Hyland* v. *Paul,* 33 Barb., 241; *Jones* v. *Howe,* 9 C. B., 2, 19; S. C., 7 Hare., 267; *Hall* v. *Wright,* 96 Eng. C. L., 795, Am. note; 3 Kent Com., 293; 1 Pars. on Cont., 1845; *Williams* v. *Grant,* 1 Conn., 487, 492; *Crosby* v. *Fitch,* 12 id., 419.) The cases relied on by appellant are distinguishable from the present case, and most of them are either where the impossibility arises from the intervention of merely human agency. (*McArthur* v. *Sears,* 21 Wend., 190; *Harmony* v. *Bingham,* 2 Kern., 99; *Beebe* v. *Johnson,* 21 Wend., 500.) Or the event does not render performance impossible, but only expensive and difficult. (*Paradine* v. *Jane,* Al., 26; Dyer, 33a; Viner Abr. Title Conditions, G. C., pl. 8; Roll. Abr. Title Conditions, G. C., pl. 8.) The clause in the bill of lading "damage or deficiency in quantity specified, if any, to be deducted from charges by consignees," relates only to the time and method of settlement, and to damage or deficiency for which the carrier, as such, is liable. Such a contract should never be extended beyond the obvious scope of its terms (Story on Bailm., § 35); and the risk of casualties is never included under the general terms of a contract. (Id., § 37.) In the absence of an express covenant, general words will not be construed as an insurance. (See *Warner* v. *Hitchins,* 5 Barb., 666, and cases cited; *Hyland* v. *Paul, supra.*) The defendant having accepted the residue, is liable to pay the freight. (Abbott on Ship., 515, 421; *Cock* v. *Taylor,* 13 East, 399; *McKibben* v. *Peck,* 39 N. Y., 262; *Dongal* v. *Kemble,* 8 Bing., 383; and see remarks of JOHNSON, Ch. J., *Wolfe* v. *Howes,* 20 N. Y., 203, 4.) It is doubtful whether even in admiralty, the defendant could have claimed of the shipowner even general average. (*Crane* v. *Aiken,* 13 Me., 229, and cases cited; *Dodge* v. *Bartel,* 5 Greenl., 286; Angel on Carriers., § 215.)

The opinions of experts as to the necessity of the jettison were competent. (*Sills* v. *Brown,* 9 C. & P., 604; *Nealton*

v. *Nesbit*, 1 id., 70, 72; *Fenwick* v. *Bell*, 1 C. & K., 312; *Price* v. *Powell*, 3 Comst., 322.) Evidence of usage on Lake Champlain, and also that the shipper saw part of the cargo loaded on deck, without objection, was competent. (2 Phil. Ins., 1282, pp. 72–75; Story on Bailm., 530a; *Gould* v. *Oliver*, 4 Bing. N. C., 134; *Milward* v. *Hibbert*, 3 Ad. & El. N. S., 120; *Da Costa* v. *Edwards*, 4 Camp., 142; *Smith* v. *Wright*, 1 Caines, 43; *Lenox* v. *Union Ins. Co.*, 3 Johns. Cas., 178.)

LOTT, Ch. C. The material question presented by the appeal is, whether the plaintiff was liable for the value of the barley that was lost on the voyage, and for that reason not delivered, to the defendant.

The plaintiff's agreement was to deliver the barley in like good order as it was received, by correct measure or weight, in the customary way, without delay. The obligation assumed was the same as that is imposed on a common carrier in his usual course of business. Assuming that it was competent for the plaintiff, as claimed on the part of the defendant, to increase his liability, " by an express agreement, to a greater extent," such agreement, as was said by VAN NESS, J., in *Schieffelin* v. *Harvey* (6 Johns. Rep., 180), "ought to be clear and capable of but one construction, unequivocally and necessarily evincing that such was the intention of both parties." There was none such entered into in this case. The plaintiff undertook, in general terms, only to make the delivery in New York. His undertaking, without the bill of lading, resulting from his duty as a common carrier, was the same. It is conceded by the counsel that "where there is no special contract as to the liability of a common carrier of property, he is responsible for all loss or damage except that which is caused by the act of God or the public enemy." Although the terms of a contract to do an act are general, and contain no specific provision to that effect, the performance thereof is nevertheless excused when it is rendered impossible by the act of God, such as lightning,

earthquake and tempest; and not accidents arising from the fault or negligence of man. (See Abbott on Shipping, p. 202.) The real question, therefore, for our determination and decision is, whether the delivery of the barley in question was so prevented, or became impossible by such a cause. Of this there is, upon the facts as found by the referee, no doubt. He finds that the plaintiff's boat was in good sailing condition; that she was not loaded beyond her capacity; that on her voyage she was overtaken by a great storm, and that the plaintiff, "by reason of the extreme violence of said storm, was compelled, in order to prevent the loss of the boat and cargo, to throw overboard a portion of said barley," which was placed in bins on deck; and that he did throw overboard the barley in question "in order to lighten his boat;" and that said barley "was not lost by reason of any neglect or mismanagement of plaintiff in the navigation of his said boat after the commencement of his said voyage."

These facts show that the loss of the boat and *entire* cargo would have been occasioned by, and have resulted from the violence of the storm, if the part actually lost had not been overthrown, and was therefore a clear case of absolute necessity.

The delivery of that portion was, under such circumstances, rendered impossible by the act of God. Story, in his work on bailments (§ 525), says: "The case of a jettison at sea, to save the vessel from foundering, and to preserve the lives of the crew, is a loss by the act of God, although it is accomplished by the immediate agency of man." (See also, §§ 531, 574, 575.) I will only add on this branch of the case a reference to the able opinion of BOCKES, J., given in the court below, and express my concurrence therein.

It is proper, in this connection, to refer to the point made by the appellant, that "it appears the loss occured in consequence of the carelessness of the plaintiff in overloading his boat." In that he is mistaken. There is no finding to that effect, or from which such fact can be inferred. All that is said or stated on that subject is, "that the boat was not loaded

beyond her capacity, but had on a heavier load than she could carry through the Champlain canal; that the plaintiff's vessel was in good sailing condition;" and the evidence does not warrant any finding beyond those. The loss did not occur on the canal, but, as stated by the referee, while the plaintiff was "in the line of his route, passing through Lake Champlain." The circumstance that the boat had on a heavier load than she could carry on the canal, as is above stated, is wholly immaterial to the question in issue.

The statement or declaration in bills of lading, "damage, or deficiency in quantity, if any, to be deducted from charges by consignee," did not impose a liability to make good the deficiency, or any responsibility. It is to be construed, in connection with the previous portions thereof, specifying and defining plaintiff's duty and obligation, and has reference only to the damage and deficiency resulting from a breach thereof. The views above expressed show that the deficiency arising from, or caused by the act of God, was not within the meaning of the agreement of the parties, and consequently is not such for which the plaintiff was liable, and no deduction was to be made therefor. He was, therefore, on the merits, entitled to recover freight for the quantity delivered, to which his recovery was limited. (See Abbott on Shipping, p. 244.) The provision in the bill of lading, for the deduction of damage and deficiency in quantity from charges by the consignee, shows that freight was to be allowed on that which was received by him. (See also Kent Com., p. 227, and Abbott on Shipping, p. 244.) The only remaining point of the appellant to be noticed is that raised by an objection to a question put to Herman A. Allen, one of the witnesses, whether he thought "it was necessary to throw off the grain from bow bin in order to save the boat and cargo." This was objected to by the defendant, "on the ground that witness was not shown competent, and that it was improper;" but was admitted. No exception was, however, taken to the decision, but was taken to a ruling made in reference to a like question put to another witness. The

question was clearly admissible. The witness was a boatman or captain of experience, and a witness of the storm, and clearly competent to express an opinion as to the necessity of lightening the boat on board of which the barley was shipped.

My conclusion, therefore, upon the whole case is that the judgment should be affirmed with costs.

LEONARD, C. The terms of the bill of lading, under which the defendant claims a delivery of all the barley shipped, are these, viz.: "Damage or deficiency in quantity, if any, to be deducted from charges by consignee." This, it is claimed, is equivalent to a warranty or insurance of the safe delivery, notwithstanding providential casualties, by which a loss did in fact occur. The terms are too general to authorize the construction demanded. It is sufficient to throw the burden of proof on the plaintiff, that the damage or deficiency, if any, did not occur by his default, or from any cause other than inevitable accident or misfortune. It does not appear that the rate of freight was unusually large, nor is there any external circumstance indicating that it was the intention of the parties that the carrier should assume more than his ordinary liability in respect to damage or deficiency arising from the act of God.

In *Hyland* v. *Paul* (33 Barb.,241), the lessee of an hotel and furniture agreed "to surrender the property in as good condition as reasonable use and wear thereof would permit." It was held that he was not liable for a loss of the furniture by fire occurring without any fault of the lessees.

In *Harmony* v. *Bingham* (2 Kern., 99), the defendant agreed to safely deliver goods in a certain number of days, and to deduct two cents per hundred pounds from the freight for every day that the goods were delayed. This was held to be an unconditional engagement, the performance of which was not excused by inevitable accident.

In *Wolfe* v. *Howes* (20 N. Y., 197), the plaintiff's testator, Nicholas Vache, agreed to do certain work for the defendants, for one year, at forty dollars per month. Vache did the

work as agreed for seven months, when he became sick, and finally died. The labor to be performed required skill and personal services. The price agreed to be paid was large. It was insisted that the contract was entire, requiring performance as a condition precedent to payment, and not excused by sickness or death. It was held that performance having been prevented by the act of God, it was excused, and the plaintiff was entitled to recover for the services rendered.

These cases sufficiently show that special language is required to prevent the operation of the customary rule in cases where the act of God or inevitable accident excuses the non-performance of the contract.

It has been found in the present case that the loss occurred during a severe storm on Lake Champlain, without any fault on the part of the plaintiff. The language of the contract is too general to prevent the application of the customary rule, that loss by inevitable accident is excused. Damage or deficiency only, which would have been prevented by care or foresight, is covered by the terms of the contract; and if the carrier refused to make a deduction from freight in such a case, he would lose his lien or subject himself to an action, not only for freight improperly exacted, as in *Harmony* v. *Bingham, supra*, but also for the loss sustained by damage or deficiency.

I think the judgment should be affirmed with costs.

All concur for affirmance.

Judgment affirmed with costs.