“Hamilton Odell, Referee.
I agree with the learned counsel for the plaintiffs, that the governing committee of the exchange had no jurisdiction, under the by-laws, *286 to determine the controversy between these parties, or the rule by which damages, payable by the plaintiffs, should be assessed, and that there was no such submission of the controversy to the arbitrament of the committee as gave to their resolution of July 6th the effect and force of an award, and that their action on August 23d was rendered wholly nugatory, as against the plaintiffs, by the grossly improper participation therein of the defendant Arens. The plaintiffs’ right to recover in this action depends, in my judgment, upon the single question whether the payment made by them to the defendants on August 24th was made ‘ under duress and compulsion,’ as they alleged in their complaint.
“ A contract obtained by coercion or undue influence may be avoided, and money paid under compulsion, unjustly exercised, may be recovered back. Where a payment is voluntarily made, with knowledge of the facts, the party paying is concluded by his own act, and the law is powerless to restore to him his money. But ‘ to constitute a voluntary payment, the party paying must have had the freedom of exercising his will. When he acts under any species of compulsion, the payment is not voluntary.’ Scholey v. Mumford, 60 N. Y., 501. Where there exists coercion, threats, compulsion and undue influence, there is no volition.’ Barry v. Equitable L. A. Society, 59 N. Y., 592. McPherson v. Cox, 86 N. Y., 472, was an action upon a bill of exchange made by the master of the defendants’ vessel, of which the plaintiff was the charterer, and which was laden with cotton and ready to sail for Liverpool. The plaintiff was also the defendants’ agent, through whom alone a Custom House clearance for the vessel could be obtained. A dispute over freight moneys arose between the master and the plaintiff, and the latter refused to procure the clearance or permit the vessel to proceed upon her voyage, unless the bill on which the suit was brought was signed. It was held *287 that the bill was obtained by duress, and that there could be no recovery. The court said: ‘ The plaintiff was the agent of the owners of the. vessel, the shipper and consignor of the goods. He, and no other person could get clearance for the vessel at the custom house, and that exclusive power, and the refusal to exercise it, was constraint. * * * The confinement, by reason of the plaintiff’s refusal to do the thing which should clear or let go the vessel, was as coercive and difficult to resist as an actual seizure or imprisonment would have been.’ The same rule was declared in Stenton v. Jerome, 54 N. Y., 485, where bonds of the plaintiff were held by the defendant, who threatened a sale of them unless the plaintiff paid a sum demanded, which was in excess of what she admitted to be due. To prevent the sale the plaintiff complied with the demand. The court said that the payment was not voluntary, that it was procured by duress of goods, and was no more voluntary in the eye of the law than if procured by duress of the person. In Swift & Courtney Company v. United States, 111 U. S., 22, the complainants, in order to continue their business, had been compelled to submit to certain orders and rules of the Internal Revenue Bureau relating to the purchase of revenue stamps for use upon goods manufactured by them, whereby they alleged they had sustained serious loss and injury. Judge Matthews said :— The question is whether the receipts, agreements, accounts and settlements made in pursuance of that demand and necessity, were voluntary in such sense as to preclude the appellant from subsequently insisting on its statutory right. We cannot hesitate to answer that question in the negative. The parties were not on equal terms. The appellant had no choice. The only alternative was to submit to an illegal exaction or discontinue its business. It was in the power of the officers of the law and could do only as they required. Money paid or other value parted *288 with, under such pressure, has never been regarded as a voluntary act within the meaning of the maxim, Volenti non fit injuria.’’
" The rule is asserted in a multitude of authorities of the highest character and is common law in all the states. It rests upon the wholesome and just principle that a party who is enabled, by circumstances, to exercise a controlling influence over the will, conduct and interest of another, shall not be permitted to make use of his position for purposes of extortion or oppression. Adams v. Irving National Bank, 116 N. Y., 613; Secor v. Clark, 54 Superior Ct. Reps., 499.
“ It is plain, however, from all the cases that a court can grant relief only when duress or compulsion is clearly proved. The compulsion ‘ must have been illegal, unjust and oppressive.’ Dickerman v. Lord, 21 Iowa, 338. The duress must have amounted to ‘ that degree of constraint or damage, either actually inflicted or threatened and impending, which is sufficient, in severity or apprehension, to overcome the mind and will of a person of ordinary firmness.’ Brown v. Pierce, 7 Wallace, 214; United States v. Huckabee, 16 Ib., 431. It must be exerted ‘ under circumstances sufficient to influence the apprehensions and conduct of a prudent business man.’ Robertson v. Frank Brothers Company, 132 U. S. ‘ To constitute the coercion or duress which will be regarded as sufficient to make a payment involuntary, there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another from which the latter has no other means of immediate relief than by making the payment.’ Radich v. Hutchins, 95 U. S., 210. There must be something more than threat and peril of pecuniary loss. Secor v. Clark, 117 N. Y., 353. The case of Silliman v. United States, 101 U. S., 465, is instructive upon this point. The claimants were the *289 owners of certain barges which they had chartered to the government, and for the use of which they were to receive an agreed rate of compensation so long as the government should retain the barges in its service. Soon after the original agreements were made, the department in charge demanded that the claimants should execute new charter parties by which the rate of compensation would be materially reduced. Of this, Judge Harlan says : ‘ It (the department) announced its purpose to retain possession and withhold all compensation unless and until the claimants executed the proposed new charter parties. In other words, the department informed claimants that it would not comply with the provisions of the original contracts unless the claimants would submit to material alteration against their interests and to the advantage of the government.’ This the claimants refused to do. They demanded possession of their vessels, but their demand was not complied with. ‘ Instead (says' Judge Harlan) of seeking the aid of the law, claimants, with a full knowledge of their legal rights, executed new charter parties, and from time to time received payments according to the rates prescribed therein, protesting, when the new agreements were” signed, that they were executed against their wishes and under the pressure of financial necessity. They now seek the aid of the law to enforge their rights under the original charter parties upon the ground that those last signed were, executed under such circumstances as amounted in law to duress.’ Their claim was held to be without foundation. ‘ There was no threat of injury to their persons or to their property, to avoid which it became necessary to-execute new charter parties. Nor were those charter parties executed for the purpose or as a means of obtaining possession of their property. They yielded to'the threat or demand of the department solely because they required, or supposed they required, money for the conduct of their business or to meet their *290 pecuniary obligations to others. Their duty, if they expected to rely upon the law for protection, was to disregard the threat of the department and apply to the courts for redress against its repudiation of a valid contract. * * * * There is present no element of duress, in the legal acceptation of that word.’
" Applying these principles, I am unable to find in the facts of the case in hand evidence of such coercion of the plaintiffs by the defendants as will warrant a finding that the payment of August 24th was not a voluntary payment but was made under duress, or as the only means of immediate relief from threatened and impending danger. The plaintiffs’ case is stated in their complaint as follows : They had contracted with the defendants to deliver certain quantities of coffee during June, 1888. They had made or tendered full performance of their contracts, which the defendants had refused to accept, alleging that the acts and offers of the plaintiffs were ineffective for lack of observance by them of certain by-laws of the Coffee Exchange, under and subject to which the said contracts had been made. A controversy had arisen between the parties which had been .submitted to the consideration of the board of managers <of the ¡exchange, and that board, after hearing the ease, had .-adopted a resolution which declared that, in their -opinion ’ the plaintiffs were in default upon their contracts, and that ‘ in their opinion ’ the plaintiffs should settle with the defendants upon terms stated in said resolution. This the plaintiffs declined to do; and afterwards, through the action of the defendants, a second hearing was had before the managers, which resulted in a readoption of the former resolution, without amendment in either of the particulars above referred to, and in a notice to the plaintiffs that ‘ this opinion is the final decision of the hoard.’ As already stated the board of managers (the governing committee) had no jurisdiction under the Jby-laws to decide this *291 controversy, and their resolution had no force as an award. It was the mere opinion of less than a- majority-of a bare quorum of the managers, and was adopted by the casting vote of Arens, who was one of the complainants and prosecutors before the board. It was incapable of enforcement by any process or proceeding, summary or otherwise.
“ By the 64th by-law of the exchange, it was provided as follows: ‘ Any member who fails to comply with his contracts, or who becomes insolvent, shall be suspended until he has settled with all his creditors. Such member shall immediately inform the manager in writing that he is unable to meet his engagements, and the manager shall thereupon immediately announce from the rostrum the insolvency of such member, and shall also post upon the bulletin board a notice to that effect for the space' of five days. The secretary shall record the failure of such member in a book kept for that purpose.’ Then follows the form of notice to be posted : ‘ Mem-, bers of this exchange are hereby notified of the inability of to meet mercantile obligations. All contracts with must therefore be closed as provided in section 66 of the by-laws.’ Section 66 provides, that ‘the official notice of the failure of a member shall operate as an immediate closing of all outstanding contracts between that member and other members of the exchange. All such contracts shall be liquidated and settled at the average quotation of like contracts made on the day of the failure, etc.’ I believe that both of the learned counsel agree that the sixty-fourth by-law applies only to cases of actual insolvency. That being so, its provisions could not be invoked by these defendants in aid of the resolution of the board of managers, for no suggestion, in any form, is made that Sawyer, Wallace & Co. were not abundantly able to meet all their obligations, and the testimony of Mr. Sawyer is that the *292 firm were solvent. They were large dealers, and on the 23d of August, had other outstanding coffee contracts, aggregating about 30,000 bags. They did business, also, on the Cotton and Produce Exchanges, and in the western and southern markets, and in Germany, France, Belgium and Great Britain.
“ The complaint contains this allegation : " That said plaintiffs made such payment under duress and compulsion. That if they had refused to do so, they would have been, as they then verily believed and now believe, posted under the by-laws as having failed, whereby all outstanding contracts to which they were parties would have been immediately closed, their credit both in this country and- in Europe would have been seriously impaired, and they would, in consequence, have suffered irreparable pecuniary damage.’ Mr. Sawyer testified that they made the payment " because we feared that the next step of the board of managers would be to post us and discipline us, the consequence of which to us would have been far more serious than the loss of the $3,500.’
“Was there any reasonable ground for such an apprehension on the part of the plaintiffs ? Was there any reasonable ground for a belief that the board of managers would proceed either to enforce a decision which they had no jurisdiction to pronounce, or to punish the plaintiffs for a failure to comply with it, by the assumption and exercise of powers which they did not possess ? Was there any good reason for believing that such illegal action, if contemplated, would be taken before the plaintiffs could take proceedings to prevent it? The proofs do not authorize an affirmative answer to either of these questions. The plaintiffs say that they made the payment believing that the board of managers meditated immediate forcible proceedings by which the plaintiffs would have been irremediably injured, and that this was constraint. Granted, but it was constraint of their own *293 creation, unless their belief was naturally and reasonably induced by the actions or intimations of the hoard. Here, it seems to me, is the weak point in the plaintiffs case.
Francis M. Scott, for appellants.
Sullivan & Cromwell, for respondents.
“ My conclusion is that the proofs fail to show a case of duress within the rules established by the authorities which have been cited. The motion to dismiss is granted.”
Per Curiam.
The judgment should be affirmed, with costs, upon the opinion of the referee.