TIMOTHY DONOVAN et al., Respondents, v. THE STANDARD OIL COMPANY of New York, Appellant.

1. CARRIER — INFORMAL AGREEMENT FOR CARRIAGE OF GOODS BY WATER — IMPLICATION OF WELL-KNOWN USAGES. When an agreement for the transportation of lumber on the great lakes is in the form of a letter addressed by a common carrier to the consignee of the property, merely offering to carry lumber from the port of shipment to that of delivery, during the season of navigation, at certain specified prices per thousand feet, but silent as to all the conditions of a contract of affreightment or charter party, with a simple acceptance of the offer, signed by the consignee, the parties must be deemed to have contracted with the understanding that well-known usages and customs might be imported into the letter to explain what its terms had left doubtful, and to effect the object which the parties had in view when it had not been expressed.

2. OWNER OF GOODS BOUND BY BILL OF LADING EXECUTED BY VENDOR AND CARRIER. When the consignee of the lumber so agreed to be carried for him has purchased it from a vendor authorized by him to deliver it to the carrier and superintend the shipment, the carrier may treat the vendor as having authority to bind the consignee by the usual contract of affreightment or bill of lading; and if, on shipping a cargo, the vendor and carrier execute a bill of lading in the usual form, exempting the carrier from liability for loss through perils of the sea, the consignee will be bound thereby.

3. RECOVERY OF FREIGHT. If a part of the cargo covered by such bill of lading is lost through a peril of the sea, the carrier cannot be held liable for the value thereof, and can recover from the owner-consignee the freight for the part transported and delivered.

*Donovan* v. *Standard Oil Co. of N. Y.*, 82 Hun, 614, affirmed.

(Argued January 12, 1898; decided March 1, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the fourth judicial department, entered December 11, 1894, affirming a judgment in favor of plaintiffs entered upon the report of a referee.

This action was brought to recover the freight upon a cargo of lumber.

The facts, so far as material, are stated in the opinion.

*David B. Lester* for appellant. The rights, duties and obligations of the parties are to be adjudged by the charter party

or agreement of affreightment, which is a complete agreement, containing all the elements of a contract of affreightment, and not by the bill of lading, and by that agreement the plaintiffs, who are common carriers, are insurers (except as against the acts of God and the public enemies), and liable for the loss of the lumber. (*Dorr* v. *N. J. S. N. Co.*, 11 N. Y. 485; *Swift* v. *P. M. S. Co.*, 106 N. Y. 206; *Guillaume* v. *G. T. Co.*, 100 N. Y. 491; *Kenney* v. *N. Y. C. & H. R. R. R. Co.*, 125 N. Y. 422; 106 N. Y. 527; *Bostwick* v. *B. & O. R. R. Co.*, 45 N. Y. 712; *Wheeler* v. *N. B. & C. R. R. Co.*, 115 U. S. 29; *G. F. Ins. Co.* v. *M. & C. R. R. Co.*, 72 N. Y. 90; *Guillaume* v. *H. & A. P. Co.*, 42 N. Y. 212; *Nelson* v. *H. R. R. R. Co.*, 48 N. Y. 498; *Blossom* v. *Dodd*, 43 N. Y. 264.) The loss of the lumber did not occur by the act of God or the public enemy, and, therefore, the plaintiffs are liable under the charter party for the lumber lost. (*Michaels* v. *N. Y. C. R. R. Co.*, 30 N. Y. 564; Angell on Common Carriers, 180, 214; 1 Pars. on Cont. 634–648; *Canfield* v. *B. & O. R. Co.*, 93 N. Y. 532; *Clark* v. *Barnwell*, 12 U. S. 272.)

*J. R. O'Gorman* for respondents. In absence of any express condition in the charter party to the contrary, the presumption of law is that the lumber was to be transported subject to the usual custom, viz., the "perils and dangers of navigation excepted." (Abbott on Shipping, 352, 353, 374, 375, 380–382; *McPherson* v. *Cox*, 86 N. Y. 472.) The consignor of goods to a distant consignee, who is the owner, is the agent of the consignee for the purposes of shipping. (*Nelson* v. *H. R. R. R. Co.*, 48 N. Y. 498; *Shelton* v. *M. D. T. Co.*, 59 N. Y. 258; *Jennings* v. *G. T. R. Co.*, 127 N. Y. 447.) The plaintiffs, as common carriers, are not liable for any loss or damage to the cargo when the loss or damage was occasioned by fire, the act of God or the dangers and perils of the lakes, rivers and navigation. (*Heyl* v. *Inman S. S. Co.*, 14 Hun, 564; *Redpath* v. *Vaughan*, 52 Barb. 489; *Price* v. *Hartshorn*, 44 N. Y. 94; *Dunham* v. *Bower*, 77 N. Y. 76; *Park* v. *Preston*, 108 N. Y. 434; *Gunther* v. *Colin*, 3 Daly, 125; *Gris-*

15

*wold* v. *N. Y. Ins. Co.*, 3 Johns. 321; U. S. Stat. at Large, ch. 105; Abbott on Shipping, 380–382.) The bill of lading given by the shipper (the defendant or its agent) to the carrier and accepted by him formed a portion of the contract for the transportation of the lumber, and, in the absence of fraud, imposition or mistake, the parties are concluded by its terms as there expressed. (*Long* v. *N. Y. C. R. R. Co.*, 50 N. Y. 76; *Kirkland* v. *Dinsmore*, 62 N. Y. 171; *Hill* v. *S., B. & N. Y. R. R. Co.*, 73 N. Y. 351; *Dayton* v. *Parke*, 142 N. Y. 391.) The cargo of the *American*, by the terms of the bill of lading, was to be delivered to the defendant upon the payment of freight, and the defendant, having received the lumber, is liable for freight. (*Abbe* v. *Eaton*, 51 N. Y. 410; *Davison* v. *City Bank*, 57 N. Y. 81; *Sheets* v. *Wilgus*, 56 Barb. 662.) The portion of the cargo that was swept overboard was lost by the act of God, *i. e.*, the storm, and that is sufficient excuse for the non-delivery of the same, even if there had been no bill of lading whatever. All parties are presumed to contract with reference to those causes over which human agency has no control. (*Colt* v. *M'Mechen*, 6 Johns. 160; *McArthur* v. *Sears*, 21 Wend. 190; *Dorr* v. *N. J. S. N. Co.*, 11 N. Y. 485; *Merritt* v. *Earle*, 29 N. Y. 115; *Howe* v. *O. & S. R. R. Co.*, 56 Barb. 121.) The referee, upon conflicting evidence, having determined, as a matter of fact, "that by the act of God, as well as the perils of the sea," the lumber was lost overboard, without fault or neglect of the said plaintiffs or their crew, servants or agents, and that the said plaintiffs or their crew or employees in no wise contributed to said loss; and such determination having been approved by the General Term, said fact is deemed to have been conclusively established upon a review of the judgment in this court. (*Crim* v. *Starkweather*, 136 N. Y. 635; *White* v. *Benjamin*, 150 N. Y. 264; *Belger* v. *Dinsmore*, 51 N. Y. 166; Redfield on Carriers, 22, 52; *Squire* v. *N. Y. C. R. R. Co.*, 98 Mass. 239; *The Delaware*, 1 Wall. 570.) The court should award damages by way of costs for the delay. (Code Civ. Pro. § 3251, subd. 5.)

O'BRIEN, J.   The plaintiffs in this action are common carriers upon the lakes, and they have recovered judgment against the defendant on a claim for freight in transporting a cargo of lumber.   The defense is, that the plaintiffs failed to deliver over a hundred thousand feet of the lumber constituting the cargo, but suffered the same to be lost on the voyage.   It is alleged that the lumber so lost was worth much more at the port of delivery than the plaintiffs' claim for freight, and, hence, the defendant seeks not only to defeat the plaintiffs' recovery, but to recover an affirmative judgment by way of counterclaim.   Most of the material facts are undisputed, and those litigated have been found by the referee in favor of the plaintiffs upon a state of the proofs that clearly warranted his conclusions.

It appears that, on the 15th of December, 1892, the defendant, a domestic corporation, extensively engaged in the manufacture of wooden boxes, entered into an executory contract, in writing, whereby it agreed to purchase from a mill and lumber company, located on Georgian Bay, in Canada, the whole cut of its Canada white pine lumber of the following year, estimated at four million feet.   The lumber was to be cut in different forms, and the quantity of each is specified with the price to be paid by the defendant.   The sellers were to deliver the lumber free on board vessel or rail at the mills, and, when fit to be shipped, removed by them at their convenience.   They were also to measure and inspect the lumber at the point of shipment, and the same was to be guaranteed by them as in conformity with the contract.   There were other stipulations in the contract concerning time and terms of payment, and other matters not material to the questions now in controversy.   It is only important to note that the vendor, the mill company, was to deliver the property at its own place of business free on board the vessel, and the purchaser intrusted it with the selection and measurement of the lumber and, incidentally, with the shipment, according to the usual and ordinary course of business.

The defendant, having thus secured its supply of lumber

for the ensuing year, then proceeded to contract for the transportation of the same by water to Oswego, where its business operations were conducted. This contract it made with the plaintiffs on the 21st of March, 1893, just before the season of navigation. It is in the form of a letter, addressed by the plaintiffs to the defendant, and is in the briefest and simplest form possible. The plaintiffs offer in the letter to carry lumber from Georgian Bay to Oswego, during the season of 1893, at certain prices per thousand feet specified, and the tug and two barges to be used for this purpose are named. The defendant wrote at the foot of this letter the words "We accept your offer as above," and signed it. The defense is based entirely upon this paper. It is said that, since it does not contain any stipulations exempting the carrier from liability for the loss of the lumber or any part of it, from whatever cause, the plaintiffs are, therefore, responsible for the value of the property which they failed to deliver. But it is obvious that, at least, some things not expressed in this paper must be implied from the nature of the transaction, the subject-matter of the agreement, and the well-known customs of business. The plaintiffs agreed to carry lumber at a specified price per thousand, but how were they to know or find out how much each cargo contained? At what point was it to be taken on board, and who was to load it? The contract is silent on these and other points. It was simply a general arrangement for the year, containing little else than a stipulation as to compensation for the carriage. It was evidently contemplated that the plaintiffs were to receive the lumber from the manufacturers in Canada, at their measurement, and that the latter would represent the defendant in all the details of shipment, according to the custom of business. In no other way could the contract be carried out.

Passing for the present from a consideration of the contract as indicated by the letter referred to, it is necessary to notice what happened subsequently as stated in the findings of the referee. About the first of August, 1893, the plaintiffs, with the knowledge and assent of the defendant, proceeded with

one of their vessels to the dock of the lumber company in Canada, and there took on board a cargo of lumber, consisting of 348,580 feet. It is found that the vessel was tight, staunch and strong, and in all respects seaworthy, fully manned and equipped in seamen, equipment and tackle, and of the proper rating, and so remained until after the loss and disaster which occurred on the home voyage; that the cargo was properly loaded, stowed and secured. There was then executed by and between the master of the vessel and the mill and lumber company, the vendor of the property, and who, as we have seen, had charge of the shipment for the consignee, the defendant, the usual bill of lading bearing date the 3d day of August, 1893, in which the cargo is described as on board the vessel bound for Oswego, " to be carried with all safe speed direct to and delivered in like good order and condition (the act of God, fire, and every other danger and accident of the seas, rivers and navigation of whatsoever nature and kind soever excepted) without delay, at the last-named port, in the manner there customary, unto the consignees named below, they paying the freight at the rate agreed upon."

The consignee named below was the defendant. If this bill of lading is to be read with the letter before referred to, and both together are to be taken as constituting the contract of affreightment between the defendant and the carriers, there can be little doubt that the case was correctly decided in view of the other facts found in reference to the disaster through which the property was lost. That it was one of the perils of navigation within the exception contained in the bill of lading cannot be doubted. In order to guard against the misuse of the numerous nautical phrases and words in which the accident is described, it will be more convenient and quite as safe to quote the language in which the learned referee has expressed it in the findings. It seems that the barge containing the cargo encountered a heavy gale on Lake Huron, and at a point about a mile and a half from the head of St. Clair river " the barge American, by reason of the wind and a heavy sea and without fault on the part of plaintiffs or the crew,

took a heavy roll to port and rolled about half of her said deckload above the rail into the sea on the port side; then the barge straightened up and rolled to starboard, and the balance of the said deckload above the rail went overboard on the starboard side into the sea." The plaintiffs delivered to the defendant the balance of the cargo, and it was for the freight on that alone that they recovered in this action. The referee found " that by the act of God, as well as by the perils of the sea," 101,909 feet of the lumber was lost overboard, and without the fault or neglect of the plaintiffs, their servants or agents or the crew.

The general course and practice of business in transporting property upon the lakes must have been known to the defendant as well as the plaintiffs, when the letter referred to was sent and its terms accepted. That being silent as to all the conditions of a contract of affreightment or charter party, the parties must be deemed to have contracted with the understanding that well-known usages and customs might be imported into the letter to explain what its terms had left doubtful, and to effect the object which the parties had in view where it had not been expressed. (*McPherson* v. *Cox*, 86 N. Y. 472; Abbott on Shipping, p. 275.)

The referee has found that the plaintiffs were directed by the defendant to proceed to the place of shipment in Canada for the cargo, and that when loaded on board the vessel a bill of lading in the usual form, to be executed for the defendant by the vendors, was to accompany the cargo. This is a fair conclusion from the whole transaction. The defendant was really the consignor and consignee of the cargo. The vendors of the lumber were authorized to bind the defendant by the customary bill of lading, since they could not well ship the property otherwise, and it does not by its terms vary the contract of affreightment as expressed in the letter, but simply amplifies it within lawful and customary bounds wherein it is silent.

The Canadian vendors of the lumber were authorized by the defendant to deliver property which the latter had pur-

chased of them to the carrier, and where a person is author-ized to so deliver the property of another, the carrier may treat him as having authority to bind the owner by the usual contract of affreightment or bill of lading. When a distant consignee of goods accepts delivery from a distant consignor at the point of shipment to be made by the latter, he becomes the agent of the owner, and the carrier may deal with him as such. (*Jennings* v. *G. T. R. Co.*, 127 N. Y. 447; *Nelson* v. *H. R. R. R. Co.*, 48 N. Y. 498; *Shelton* v. *Merchants' Dispatch Trans. Co.*, 59 N. Y. 258.)

The bill of lading, therefore, which was executed between the master of the barge and the shippers in Canada bound the defendant under the circumstances of this case, and the carriers were relieved from liability for the loss of the lumber caused by the perils of the sea. This instrument must be read with the letter referred to under which the plaintiffs entered into the general arrangement, in order to ascertain the full extent of their duties and obligations as carriers. There is nothing in the letter inconsistent with the right of the carrier to procure from the defendant's agent in charge of the shipment of their lumber the usual bill of lading, or that relieves the defendant from the conditions upon which the goods were received. Hence, the plaintiffs were entitled to recover the freight on that part of the cargo delivered. (*Price* v. *Hartshorn*, 44 N. Y. 94; *Dunham* v. *Bower*, 77 N. Y. 76; *Park* v. *Preston*, 108 N. Y. 434.)

There are no other questions in the case that can affect the judgment or that require any further notice.

The judgment should be affirmed, with costs.

All concur, except GRAY, J., absent, and MARTIN, J., not sitting.

Judgment affirmed.