### John A. Higginson & another *vs.* William F. Weld & others.

H. made this agreement with W., a ship owner: "It is understood that said ship is on a voyage to Australia, thence to Calcutta, where she is to load for Boston; and H. agrees to furnish 150 tons of goods from Calcutta, paying a freight of $14.50 per ton. W. also agrees that said ship shall be kept in suitable order for the voyage, and that he will receive said freight on the terms named, the dangers of the sea and fire excepted. Penalty for the nonperformance of this agreement by either party, $2200." The master, in violation of his orders, did not go to Calcutta, but sailed from Australia for another port. *Held*, that the contract of W. was absolute, and was broken by the failure of the vessel to be at Calcutta to receive her cargo, even if the master was insane.

*Held*, also, that an offer made by W. at Boston, after hearing of the change of voyage, and eleven days before the day when the vessel ought to have arrived at Calcutta, to obtain for H. the same amount of tonnage in another vessel, was not a substituted performance of the contract, which H. was obliged to accept.

Upon the breach of a contract of the owner of a vessel that it shall be at a foreign port ready to receive goods to be there furnished, in which it is agreed that the penalty for nonperformance by either party shall be $2200, the measure of damages is not the amount named as a penalty, but the difference between the stipulated rate of freight and the current rate at the port at the time when the vessel should have been ready to receive her cargo, and interest upon that sum, to be computed from such a date as would make proper allowance for the time for loading and for ordinary delay.

ACTION OF CONTRACT upon a written agreement executed in Boston on the 13th of March 1854, of which the following are the material parts:

"Memorandum of an agreement between J. & F. Higginson of Boston, and Wm. F. Weld & Co., also of Boston, owners

of the ship Humboldt. It is understood that the said ship is now on a voyage to Australia, thence to Calcutta, where she is to load for Boston; and said J. & F. Higginson hereby agree to furnish one hundred and fifty tons of goods for her return cargo from Calcutta, paying a freight of fourteen 50-100 dollars per ton on the same."

" Said Wm. F. Weld & Co. agree that said ship shall be kept in suitable and proper order for the voyage, and that they will receive said freight on the terms named, the dangers of the seas and fire excepted. Penalty for the nonperformance of this agreement by either party, twenty two hundred dollars."

Soon after the date of this agreement the plaintiffs parted with their interest in the contract to William C. Codman, in whose behalf the suit is brought.

It is the mercantile practice at Calcutta to buy and sell tonnage for Boston, London and other ports, like any article of merchandise; and the market rate to each port is regularly quoted in the prices current.

The Humboldt arrived in Australia about the 4th of March 1854, and remained there until the 4th of May following, when the master, in violation of the defendants' orders, which were to go to Calcutta, sailed for New York. On the 13th of June the defendants received information of the change of voyage, and gave notice thereof to the plaintiffs and to Codman; and requested Codman to write to his agents at Calcutta not to make any purchases of goods for the tonnage in the Humboldt; and added that they would see Codman as to any forfeit for nonperformance. And Codman on the same day wrote to his agents accordingly. He had previously forwarded letters of credit on London to them to purchase goods to fill his tonnage in the vessel; but no such purchases were actually made.

On the 23d of June the defendants addressed a letter to Codman, through the plaintiffs, offering to direct their agents at Calcutta to obtain the same amount of tonnage by other vessels for Boston, and to tender the same to the agents of Codman at Calcutta. This offer Codman declined. The mail time between Boston and Calcutta is about seven weeks. If the Hum-

boldt had sailed from Australia to Calcutta, instead of to New York, she should have arrived there in about sixty days, no accident happening. The rate of tonnage for Boston, on the 4th of July, and for some time previous and subsequent thereto, was eighteen and a half dollars per ton.

The defendants offer to prove that the master had become insane, and that his conduct was to be attributed to that cause; and that they had sustained a large loss by the change of voyage. The parties submitted the case to the decision of the court upon the above facts.

*R. Codman*, for the plaintiffs. 1. The defendants undertook by their contract that their vessel should go to Calcutta and receive the plaintiffs' cargo, dangers of the seas and fire excepted. *Ollive* v. *Booker*, 1 Exch. 423. *Glaholm* v. *Hays*, 2 Man. & Gr. 257. *Gorrissen* v. *Perrin*, 2 C. B. (N. S.) 699.

2. The insanity of the master would not excuse the defendants from a performance of their contract; and the questions as to that, or the success of the substituted voyage, were not material. 3 Kent Com. (6th ed.) 209. *Hadley* v. *Clarke*, 8 T. R. 267. *Shubrick* v. *Salmond*, 3 Bur. 1637.

3. The tender of tonnage by the defendants in another vessel has no effect, especially as it was made subsequently to the countermand of orders by the plaintiffs at their request.

4. The sum of $2200 named in the agreement is to be deemed liquidated damages and not a penalty. It is evidently the result of calculation, being in round numbers the amount of the freight money. The court will look at the whole agreement, and the use of the word " penalty " will not vary the general intent. *Pierce* v. *Fuller*, 8 Mass. 228. *Dakin* v. *Williams*, 17 Wend. 454. 2 Parsons on Con. 434. Where the whole damages are incapable of being estimated, as in this case, the construction is in favor of liquidated damages. *Nobles* v. *Bates*, 7 Cow. 309. *Crisdee* v. *Bolton*, 3 Car. & P. 243. The tendency of recent decisions, especially in England, is to restrict the rule of interpretation as to penalties. *Reynolds* v. *Bridge*, 6 El. & Bl. 543. *Atkyns* v. *Kinnier*, 4 Exch. 776.

The plaintiffs are at least entitled to the difference between

the contract price and the market value of tonnage for Boston at the time the ship ought to have been at Calcutta. This agreement is virtually a charter party for 150 tons. Abbott on Shipping, (7th ed.) 241. Addison on Con. (2d ed.) 472. Had the breach not occurred, the plaintiffs could have sold at an advance of $4 a ton or $600 on the whole, and they are entitled to this as a profit directly resulting from the contract. *Fox* v. *Harding*, 7 Cush. 522. *Masterton* v. *Mayor &c. of Brooklyn*, 7 Hill, 61. *Robinson* v. *Harman*, 1 Exch. 850. *Hopkins* v. *Grazebrook*, 6 B. & C. 31. Sedgwick on Damages, (3d ed.) 292. The difference between the contract price and the market price is a well settled basis of damages. *Hopkins* v. *Lee*, 6 Wheat. 109. *Shaw* v. *Nudd*, 8 Pick. 9. *Quarles* v. *George*, 23 Pick. 400. *Furlong* v. *Polleys*, 30 Maine, 491. *Clark* v. *Pinney*, 7 Cow. 681. *Cort* v. *Ambergate, Nottingham & Boston & Eastern Junction Railway*, 17 Ad. & El. N. R. 127. Sedgwick on Damages, 270, 277 & note. In all cases where there is a market price, it furnishes the true rule of damages. *Blydenburgh* v. *Welsh*, Bald. 340. *Wells* v. *Abernethy*, 5 Conn. 227. *Royalton* v. *Royalton & Woodstock Turnpike*, 14 Vern. 311. The current market rate of freight has been used by the courts as a measure of damages. *Mitcheson* v. *Nicol*, 7 Exch. 929.

Besides the $600, the plaintiffs are entitled to interest upon that sum from the time of breach, which was the time when the vessel should have been at Calcutta, namely July 4th 1854.

*F. C. Loring*, for the defendants. 1. The contract declared on is executory, conditional and dependent on a contingency which did not occur — the arrival of the ship at Calcutta. It contains no warranty that the ship should arrive at Calcutta, any more than that on her arrival she should load for Boston ; it merely recites the fact that she had sailed on a voyage of which Calcutta was one of the ports of destination. The exception of the dangers of the seas refers only to the voyage from Calcutta to Boston, after goods loaded.

When the meaning of an instrument is that no estate shall vest unless a particular act is done or event happens, the condition, however expressed, is a condition precedent. *Egerton* v

*Brownlow,* 1 Sim. N. S. 464, & 4 H. L. Cas. 1.     Cases of sales to arrive are strictly analogous.   In fact this contract was an executory contract of sale of part of the ship's capacity, contingent on her arrival and loading for Boston.   It was a vendible privilege and an article constantly in the market.   It is well settled that a sale to arrive does not imply a warranty of arrival, but is executory and conditional, depending on the arrival of the goods in the particular ship.     *Boyd* v. *Siffkin,* 2 Campb. 326. *Hawes* v. *Humble,* 2 Campb. 326, note.   *Idle* v. *Thornton,* 3 Campb. 274.   *Lovatt* v. *Hamilton,* 5 M. & W. 639.   *Johnson* v. *Macdonald,* 9 M. & W. 600.   *Alewyn* v. *Pryor,* Ry. & Mood. 406.   *Fischel* v. *Scott,* 15 C. B. 69.   *Vernede* v. *Weber,* 1 H. & N. 310.   *Russell* v. *Nicoll,* 3 Wend. 112.   *Shields* v. *Pettee,* 4 Comst. 122.   So in other cases of conditional contracts.   *Shadforth* v. *Higgin,* 3 Campb. 385.   *Busk* v. *Spence,* 4 Campb. 329. *Graves* v. *Legg,* 9 Exch. 709.   *Preston* v. *Liverpool, Manchester & Newcastle Junction Railway,* 5 H. L. Cas. 605.   *Couturier* v. *Hastie,* 8 Exch. 40, & 5 H. L. Cas. 673.   *Benedict* v. *Field,* 4 Duer, 154.

2. If the master was sick and deranged, this was of itself a sufficient excuse for the nonperformance of the agreement; it being one of those events which human sagacity could not foresee or guard against.   *The Casco,* Daveis, 187.

3. The plaintiffs have suffered no loss or damage by the non-arrival of the ship at Calcutta.   They did not purchase goods in anticipation of the arrival of this ship, which they were compelled to sell at a loss, or ship at a higher rate of freight.   It is not alleged that a shipment, if made, would have paid a profit. If a profit might be demonstrated, it must be necessarily contingent on the safe arrival of the ship at Boston in due season — which the defendants did not insure.   They might have sold their privilege at an advance; but they did not sell, and did not intend to.   Their loss is wholly speculative and contingent.

Any liability of the defendants was removed by their offer to furnish the plaintiffs with the same amount of tonnage at the same rate in another vessel; so that it was the plaintiffs' fault if they did not make all the profits which might have been

realized if the ship had arrived.  They might also have sold the privilege, which the defendants offered to furnish, at the advanced rates of freight, and realized a profit thereon.  By reason of this offer they were put in the same position as if the ship had arrived in due time.

4. If the plaintiffs are entitled to recover, it must be on proof of actual loss ; they are not entitled to recover the amount of the penalty as liquidated damages.  Sedgwick on Damages, 410.

If not entitled to the penalty, they claim the difference between the rate of freight stipulated in the agreement and the price at which the privilege might have been sold.  But no sale was made or contemplated, and the defendants, instead of preventing, made it possible for the plaintiffs to sell, and realize this profit — which they omitted to do.

If the ship had arrived, and the plaintiffs had preferred not to ship, and had found another to furnish the amount of tonnage they had agreed to, at the same rate of freight, the master would have been bound to take it, and would have had no right to come home empty and claim damages of the plaintiffs.  Sedgwick on Damages, 361, & cases cited.  *Bailey* v. *Damon,* 3 Gray, 92.

HOAR, J.  The principal question to be determined in this case is the construction of the contract of the parties.  The defendants contend that this contract was conditional, and was only to become obligatory upon them in case the ship Humboldt arrived at Calcutta, and there loaded for Boston.  But we cannot conceive that such was its true intent and meaning. The agreement seems to us to have been an absolute one; that the defendants would receive at Calcutta the cargo which the plaintiffs on their part undertook to furnish for the return voyage, and that the only exception was of " the dangers of the seas and fire."

There seems to be nothing in the terms of the contract, in its obvious purpose and object, or in the relations of the parties, which should lead to the restricted interpretation for which the defendants argue.  " It is understood," in the ordinary use of that phrase, when it is adopted in a written contract, has the

same force with " it is agreed." The obligation of the plaintiffs was absolute. It imposed upon them the duty and risk of transmitting and investing the necessary funds to provide the cargo for which they had stipulated, to take care that it was ready upon the arrival of the vessel, and to make good all damages which might arise from any failure on their part to do what they had agreed. They could have no inducement, it would seem, to bind themselves to furnish the freight, without any corresponding obligation to provide a vessel to receive and transport it. There would be no mutuality in such an agreement. If the defendants intended to make their contract conditional upon the arrival of the vessel at Calcutta, it would have been easy to say so in express terms. In the absence of such a statement, the court cannot add it by construction. It would have been just as reasonable to hold that the plaintiffs' obligation to provide the cargo was dependent upon their having goods at Calcutta which could profitably be shipped at the time the Humboldt arrived. The second clause of the stipulation of the defendants is very explicit and free from ambiguity. " Said Wm. F. Weld & Co. agree " " that they will receive said freight on the terms named, the dangers of the seas and fire excepted." The exception directly follows the agreement to receive, and marks the only limitation of that undertaking.

But there are other considerations which lead to the same conclusion. A penalty of $2200 is fixed for the nonperformance of the agreement by either party. There is no agreement on the part of the defendants, to which such a penalty would be applicable, except the agreement to have the ship at Calcutta to receive the freight. It cannot be supposed that the parties meant to limit to this sum the liability of the defendants to carry the cargo safely to Boston, because the goods might be, and were probably expected to be, of much greater value.

The conduct of the defendants, when they first learned that the contract had been broken, shows that they put the same construction upon it. They immediately notified the plaintiffs' assignee not to make any purchases of goods for the tonnage of the Humboldt, and added " that they would see him as to any

forfeit for nonperformance." Ten days afterwards, they offered to provide the same amount of tonnage by other vessels. There was no suggestion, and apparently no idea, that the contract was conditional.

The defendants further contend that the insanity of the master was a sufficient excuse for their failure to furnish the vessel according to the contract. But this does not come within the exception which they were satisfied to make the only one to the absolute fulfilment of their engagement. *Expressio unius est exclusio alterius,* is a maxim which applies as forcibly to the exceptions to an obligation as to the enumeration of the objects to which the contract applies. The disease of the master was a misfortune, but the plaintiffs did not assume the risk of it.

Nor can we see any just grounds to hold that the offer in Boston, on the 23d of June, to furnish another vessel, was a substituted performance which the plaintiffs were bound to accept. If the Humboldt had gone to Calcutta she would have arrived there, according to the usual rate of passage, on or about the 4th of July. It was about that time that the plaintiffs had a right to expect her, and to make their calculations and arrangements for the purchase and shipment of their goods. It would take seven weeks to send information of the new arrangement to Calcutta, and defer the time of shipment to the last of August, which might make a material change in those arrangements. But, in addition, the plaintiffs had been expressly notified, ten days before, to countermand their orders for the purchase of goods, and had transmitted this notice to their agents at Calcutta. It was not to be presumed that they had retained the funds which they had provided to make their shipment by the Humboldt, without some other disposition of them.

We therefore think there was clearly a violation of the written contract by the defendants; and the only remaining questions are those which relate to the amount of damages.

The plaintiffs claim the sum of $2200, as liquidated damages, which have been agreed on by the parties. But there are two decisive objections to the claim. In the first place, in the language of Chief Justice Marshall, in *Tayloe* v. *Sandiford,* 7

Wheat. 17: " The parties themselves denominate it a penalty; and it would require very strong evidence to authorize the court to say that their own words do not express their own intention." But further, and applying a rule which is among the most important in determining whether the sum named is to be treated as a penalty, or as liquidated damages, it appears very clearly by the contract that the penalty named would be alike incurred by the nonperformance by either party of any of its numerous stipulations; and that the actual damage caused by a failure to perform some of them might be very trifling in amount, and capable of very exact pecuniary estimation. If, for example, the plaintiffs had failed to furnish five or ten tons of the stipulated cargo, or if the defendants had failed in some trifling particular to keep the ship in proper order for the voyage, so that one or two packages of goods had been injured, can it be supposed that it was in the contemplation of either that so serious a consequence should follow ? The penalty would be the whole sum to be paid for a breach of the whole contract; and it would be unjust and oppressive to require either party to pay it, for violating any one of the least important items.

We are then brought to the consideration of the actual amount of damages which the plaintiffs have sustained. The defendants should pay such a sum as would place the other party in as good a pecuniary condition, at the time the contract was broken, as if it had been performed; and this is capable of being easily and satisfactorily ascertained, from the facts agreed. The rate of tonnage at Calcutta, at the time when the Humboldt should have arrived, was four dollars a ton higher than the price which the plaintiffs were required by the contract to pay. The right to tonnage was at that port, by commercial usage, a merchantable right, bought and sold in the market, and quoted in the price current. The plaintiffs would have been obliged to pay four dollars a ton more to any other owner of a vessel in that port, at that time, than they had agreed to pay to the defendants; and might have sold the right secured to them by the contract at the same advance. The difference between the contract price and the market price, with interest from the time

15*

when the freight would become payable, that is, from the time when the Humboldt ought, under ordinary circumstances, to have arrived in Boston, seems to us the reasonable and proper amount of damages which the plaintiffs are entitled to recover.

Making proper allowance for the time for loading at Calcutta, and for ordinary delays on such a voyage, we fix the time from which interest should be computed at the 1st of January 1855.

*Judgment for the plaintiffs for* $600, *and interest from January* 1st, 1855.