BALDWIN *v.* SULLIVAN TIMBER CO.

(*Supreme Court, General Term, First Department.* October 20, 1892.)

1. DEMURRAGE—DELAY IN LOADING.
    The fact that a charter party stipulates for demurrage only in case of delay in delivering cargo, and is silent as to delay in loading, providing merely, as to loading, that it should be done by the charterers, does not affect the right to demurrage for such delay in loading, as the implication is that it should be done in reasonable time. *The M. S. Bacon* v. *Transportation Co.*, 3 Fed. Rep. 344, and *Scholl* v. *Steel Co.*, 5 N. E. Rep. 782, 101 N. Y. 602, followed.

2. SAME—PROOF OF DAMAGES.
    Where a stipulated sum is agreed on as demurrage for each day's delay in delivering cargo to a vessel, it is to be presumed, without proof of actual damage, or the amount of it, that delay arising from another cause, as in loading, for which the charterer is also liable, will operate equally to the disadvantage of the vessel owner.

3. SAME—COMPUTATION OF TIME—SUNDAYS.
    Sundays are properly included in computing demurrage.

4. SHIPPING—BILLS OF LADING—DURESS—SETTLEMENT OF CLAIMS.
    The signing of bills of lading by a ship's master, under protest, admitting certain claims of charterers against the vessel, which signing was induced by threats of the charterers to prevent clearance, as under Rev. St. U. S. § 4200, they would have had the power to do, amounts to duress, and does not affect the right of the owners to recover said claims, although by the charter party the signing was to set all claims at rest.

Appeal from circuit court, New York county.

Suit by Radcliffe Baldwin, assignee of the Neptune Steam Navigation Company, against the Sullivan Timber Company, for demurrage and other claims. From a judgment entered on a verdict in favor of plaintiff for $2,156.77 damages and $298.14 costs, and from an order denying a motion for a new trial, made on the judge's minutes, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and O'BRIEN and PATTERSON, JJ.

*Kellogg, Rose & Smith,* (*L. Laflin Kellogg,* of counsel,) for appellant. *Seward, Dacosta & Guthrie,* (*Wm. D. Guthrie* and *Charles Steele,* of counsel,) for respondent.

PATTERSON, J. A critical examination of the whole record in this cause presented on this appeal satisfies us that the learned judge at circuit correctly interpreted the contract between the shipowners and the defendant, properly defined in his charge to the jury the obligations of the former and the liability of the latter under the stipulations of the charter party and the rules of law applicable to the facts appearing on the trial, and that he committed no error in the reception or rejection of evidence such as would require a reversal of the judgment. The plaintiff sued as the assignee of the Neptune Steam Navigation Company, a foreign corporation, and the owner of the steamship Albano. On the 6th of April, 1888, the agents of the owners and the defendant entered into a charter-party agreement, by which the latter chartered the steamer named for a voyage from the port of Pensacola, Fla., to a port in the United Kingdom, or other destination, as might be ordered on signing bills of lading. Among other things, it was agreed that the ship

should proceed to Pensacola, there load (always afloat) from the charterers a full and complete cargo of sawn boards or deals, the charterers to do the stowing of the cargo, supply dogs and chains, furnish cargo as fast as required for loading, and only such as could go through the ship's hatches, pay watermen, etc. The lay days were to commence the day after the vessel was ready to receive cargo in loading berth, and written notice given of such readiness to charterers; "and, should the cargo not be delivered to vessel at Pensacola within specified time, for each and every day over and above said lay days, charterers are to pay, day by day, the sum of eighteen pence sterling per net register ton, demurrage; any detention through quarantine not to count in lay days." The ship's net register tonnage was 1,533 tons. The charter party also contained the following provision: "The charterers' responsibility under this charter shall cease as soon as the cargo is shipped and bills of lading signed, provided the conditions called for in this charter have been fulfilled or provided for by bills of lading." The ship proceeded to Pensacola, and loaded, but the plaintiff claims was unnecessarily detained, and demands demurrage or damages in the nature of demurrage for such detention for six days, in consequence of alleged default in stowing or furnishing cargo as fast as required for loading, and claims also to recover the expense of towage incurred to enable the steamer to lie afloat, she having been directed by the defendant's agent to a loading berth where she grounded, and from which it was necessary to remove her; and also money expended for water and for dogs and chains which the ship was obliged to pay for. The defendant denied in its answer the allegations of the complaint relating to the several items of the plaintiff's claim, and set up the affirmative defenses that, if any delay occurred in loading, it was the fault of the ship's master, or otherwise arose from causes beyond the control of the charterers, and that by the signing and delivery of the bills of lading after receiving cargo, and an examination by the master of the defendant's account, an adjustment and settlement of all claims of the nature of those sued upon was had pursuant to the condition of the charter party above quoted. In opposition to the claim for demurrage it is urged by the defendant that under the express terms of the charter party no liability exists; that its provisions in that regard are limited to delays occasioned by failure to deliver cargo alongside ship, and, nothing being said in the contract concerning delay in loading, all claim therefor is excluded; and a motion for a nonsuit was made on that and the further ground that there was no proof, either of default in delivering as fast as possible to the vessel, or of damage for failure to load, the liability for the stipulated amount of demurrage being confined to the specific contingency of neglect to deliver cargo to the vessel. This motion was properly disposed of. The obligation or duty of the defendant did not cease on merely bringing to the ship the material to be transported. The charterer undertook and was bound to stow,—that is, to load the cargo, to put it in place on the vessel,—and that being incumbent on the defendant, and there being no time mentioned within which it was to be done, the obligation existed to complete the loading within a reasonable time. Failing that, the vessel being detained in consequence, the liability for damages in the nature of demurrage accrued, notwithstanding the silence of the charter party in respect thereto; for it would be absurd to assume that the charterer, because it was held liable in express words for delay in discharging one part of its duty, was to be exempt from all responsibility for detention caused by a willful violation of another part of that duty of equal importance. The rule of law applicable to this case has been frequently announced. In *The M. S. Bacon* v. *Transportation Co.*, 3 Fed. Rep. 344, the United States circuit court said: "An express stipulation for demurrage in a contract of affreightment is not necessary to entitle the owner of a vessel to compensation for her unnecessary or improper detention in loading or unloading. Reasonable promptitude in delivering a cargo at its point of ship-

ment or receiving it at its destination is a duty implied in such contracts, and for its violation damages in the nature of demurrage are recoverable. This is too well settled, both in England and in this country, to need discussion or authority." And in *Scholl* v. *Steel Co.*, 101 N. Y. 602, 5 N. E. Rep. 782, it is stated that the owner of the cargo is liable for unreasonable delay in discharging, although the bill of lading contains no stipulation as to demurrage, and prescribes no time within which the cargo shall be delivered; and, further, that it is "a question of fact to be determined upon all the circumstances whether there was unreasonable delay on the part of the defendant in discharging the vessel." The learned judge in the court below acted upon this view of the subject. There was no time mentioned in the charter party within which the loading was to be done. The law therefore implied the obligation to do it within a reasonable time, and it was for the jury to say whether there had been unnecessary delay, and, if so, for how long a time. It may be remarked at this point that these questions were left to the jury under explicit and correct instructions that the attention of the jury was called by the court to all the matters of fact in controversy on this branch of this case, viz., whether there was unreasonable delay of the shipper in loading, or whether the detention was caused by the stanchions of the vessel not being removed, (which seems to have been the specification of the remissness or fault ascribed to the master,) or by the defendant employing an insufficient number of men to work at the four hatches, or whether there were stormy days during which it was impossible to load cargo.

The refusal to dismiss the complaint on another ground urged was also correct, and what is now said applies also to the contention of the defendant that the court erred in instructing the jury as to the measure of damages. It was insisted that it was necessary for the plaintiff to show actual damage, and the amount of it. No proof of that distinct character was offered. The court, in its charge, instructed the jury that, if they found for the plaintiff on the main issue as to the delay, they must also find the number of days of detention, and that for each of the days so found under the terms of the charter party the demurrage was fixed at about $240 or $245. We are of opinion that the stipulated amount of damage was *prima facie* evidence of loss occasioned by an unexcused delay of the charterer, the ship not being in fault. The right to recover arises from the fact of detention, whereby the owners were prevented from performing service or using the vessel. If a stipulated sum is agreed upon for delay in one event, it is to be assumed that detention arising from another cause, for which the charterer is liable, would operate equally to the disadvantage and to the same amount of loss to the owner, and this view finds support in authority, (*Moorsom* v. *Bell*, 2 Camp. 616; *Sanguinetti* v. *Pacific Steam Nav. Co.*, L. R. 2 Q. B. 238; *Harris* v. *Jacobs*, L. R. 15 Q. B. 247;) and in the computation of time Sundays were properly included. Three Sundays intervened between the date of the notice of the ship's readiness to receive cargo and the completion of the loading. The court refused to charge that such Sundays were to be deducted from the days for which demurrage might be allowed. This was not error (*Lindsay* v. *Cusimano*, 12 Fed. Rep. 503; *The Oluf*, 19 Fed. Rep. 459) under the circumstances disclosed on the trial.

Concerning the defense that the signing and delivering of the bills of lading set at rest all claims as provided by the charter party, proof was introduced by the plaintiff tending to show that such bills were given under coercion. The master testified, in effect, that the defendant's agent threatened to withhold clearing the ship at the customhouse unless the bills of lading were unconditionally signed; that he declared to the agent in signing them that he did so only because he was forced to, and would protest as to what had been done. Demands had been made on the part of the defendant for payment of certain sums claimed to be charges against the vessel. They were disputed

by the master. Thereupon followed the refusal to clear unless the claims were admitted and paid, and clean bills of lading signed. It was left to the jury to say whether the payment was under compulsion, and the bills of lading given under duress. The judge was right in submitting it to the jury, and in his instructions to them on the subject. As the charges were improperly made,—they are included in the items for which the plaintiff sued and for which he had a verdict,—the refusal was equivalent to constraint. The defendant had the exclusive power to get clearance for the vessel, (section 4200, Rev. St. U. S.,) and the refusal to exercise it unless these disputed items were paid amounted to duress, as was held in McPherson v. Cox, 86 N. Y. 472.

We have examined the exceptions to rulings on evidence, but do not find any requiring special consideration. The questions relating to the custom of the port of Pensacola were directed to the number of men employed in loading vessels "of the class of the Albano." The questions were entirely too vague, and answers to them would not have aided the defendant's case. But the testimony of the defendant's witnesses was to the effect that sufficient men were actually engaged; that from 15 to 57 were at work, as the weather permitted, and, except at occasional times, four gangs were occupied, and that they could not always work advantageously, because of the adverse currents and bad weather. All this was laid before the jury, and they discredited it. The exceptions as to the dealings of Sullivan with the master were not well taken. Sullivan acted for the company with, and in the presence of, Wheeler, the president, and he was thus held out to the master as authorized to act. He presented the bills of lading for signature, and some of the receipts for lumber are made out in his name as the person delivering it to the ship, as appears by receipts signed by Kelley, the mate. We find nothing to criticise in the rulings of the court or its instructions to the jury respecting the other items for which a recovery was had. The jury found that the payments for dogs and chains and for towage were, in effect, extorted, and there was testimony to support the finding. It was clearly the duty of the charterer to pay the watermen. It was so stipulated in the charter party. The amount paid for taking back from the vessel the excess of lumber at the ship's side over what could be loaded was a disbursement chargeable against the defendant, for no more was to be sent than could be taken aboard. The judgment and order denying the motion for a new trial are affirmed, with costs. All concur.