AtkiksoN, J.,
delivered the opinion of the court:
This is a suit to recover damages for delay in the nature of demurrage in the loading of two schooners, the Mary F. Barrett and Jacob M. Haskell, at Newport News, Va., in January and February, 1907.
*564 October 24, 1906, a contract was claimant company and the United States, the following provisions of which, with those contained in the charter party, govern the issue upon which the claim herein is based:
“ That they, the said party of the first part, will furnish and deliver at their own risk and expense, at such place as specified below, from the date of this contract, the following articles, and at the price set opposite each item, respectively:
“ 1. Transportation 8,000 Lamberts Point or Newport News, Ya., or Baltimore, Md., at the option of the bureau, to the United States naval station, Guantanamo, Cuba.
2. Shipments after, at, per ton, $1.40.
3. others to report for loading at such times (say, about two weeks apart) as will avoid incurring demurrage at Guantanamo. The schooners to report for loading. to the suppliers of the coal at the place designated to load, and upon reporting to take turn in loading, it being understood that government dispatch will be accorded; when loaded to sail immediately for Guantanamo, reporting arrival to the commandant, and be subject to his orders in the matter of discharge.
4. All expenses the Government agreeing to discharge each cargo.
5. The agrees of 200 tons per day, excepting Sundays and legal holidays and such other days as by the custom of the port work is not required, it being understood that all the schooner’s appliances and attendant expenses shall be given at the expense of the schooner to assist in discharge. In case of failure “to discharge at the above-named rate, the Government to pay demurrage at the rate of six (6) cents per ton per day on the quantity discharged for any detention caused by the Government (through fault of its own) not discharging at said rate.
* * * :j: * * *
“ 9. Demurrage, general average, and all other claims against cargo to be settled by the Auditor for the Navy Department. .
“ It is mutually understood and agreed, as no payment or allowance to said part}? of the first part will or shall be made by the United States for or on account of this contract except as herein specified.”
*565 For the purpose of carrying out this contract with the United States the claimant company chartered from Cromwell & Thurlow, ship brokers of Boston, Mass., the two vessels above named, which charter contained the following provision :
“ It is agreed that the lay days for loading and discharging shall be as follows (if not sooner dispatched) : Commencing from the time the captain reports his vessel ready to receive or discharge cargo. Cargo to be loaded in sis (6) running days, Sundays and legal holidays excepted, and to be discharged at the rate of 250 tons per running day, Sundays and legal holidays excepted, and that for every day’s detention by default of said party of the second part or agent, 6 cents per ton on cargo discharged, per day, shall be paid by said party of the second part or agent to said party of the first part or agent.”
The claimant company was charged by the charter parties damages for four days’ delay iri loading the schooner Barrett the sum of $642.48, and for ten days’ delay in loading the schooner Haskell the sum of $1,498.20, making a total of $2,140.68, for delays in loading the two vessels, which amount ivas paid by the claimant company, and to recover the same from the United States this suit is brought.
The damages, however, which the claimant company paid Avere not by virtue of their charter party with the United States, but were by virtue of their charter party with a third party with whom the Government was not concerned; hence such payment, of itself, would not establish the quantum of damages sustained by the claimant company, nor would it establish AA'hether said amount was reasonable or not. But inasmuch as the contract specifies 6 cents per ton as a reasonable basis for damages at the unloading point, it seems to us that a like amount should be conceded as a proper allowance at the point of loading, and would therefore establish the 6 cents per ton rate as a reasonable allowance for the measure of damages in this case, provided damages are allowed by the court. (Baldwin v. Sullivan Timber Co., 20 N. Y. Supp., 496.)
The claim was presented to the Auditor for the Navy Department for payment and was by him refused for the reason that section 3 of the contract, sufra, makes no provision for *566 demurrages in the loading of the vessels and that under the contract the United States was not bound to guarantee to the shipper “ government dispatch,” i. e., precedence over merchant vessels in loading, and consequently these chartered schooners were restricted to the general rule of “ taking their turn ” in loading at the port named in the contract. Hence it is claimed by them that the United States was not in any way responsible for the delay in loading, and did not, under the terms of the contract, intend to make themselves liable for such delay. The case was appealed to the Comptroller of the Treasury, who sustained the rulings of the auditor.
1. The first question arising in this case is; Does the contract bind the United States to give precedence to these two vessels under the following language contained in section 3 of the contract, supra, viz: 44 The schooners to report for loading to the suppliers of the coal at the place designated to load, and upon reporting to take turn in loading, it Toeing understood that government dispatch will be accorded? ”
In the absence of express stipulations qualifying it, the duty of the charterer to furnish a cargo according to the charter is absolute. The charterer, therefore, will not be relieved from his express contract to load in a fixed time, or from his implied contract to load in a reasonable time, by anything preventing him from bringing a full and complete cargo to the place of loading. (Scrutton on Charter Parties, 83, and cases there cited.)
The contention of the defendants is that the words “ it is understood,” in section 3 of the contract above quoted, often mean the same thing, and have the same legal effect as “ it is agreed ” or “ it is covenanted,” but they deny that such terms can have the effect claimed for them by the claimant company in this case, because it is expressly stipulated in the same sentence that the claimant company’s vessels shall “ take their turn in loading.” Following this stipulation, defendants further insist, come the words “ it being understood that government dispatóh will be accorded; ” hence, they maintain, this latter provision in the contract, following a positive stipulation, means nothing more than “ it is believed ” or “ it is said ” or “ it is reported ” that “ government *567 ■dispatch ” will be accorded in the loading of the vessels in controversy.
The Chief of the Bureau of Equipment, Navy Department, in transmitting the claim for damages in this case to the Auditor for the Navy Department, said:
“ It will be observed from paragraph 3 oí the specifications governing the contract that the bureau promised government dispatch in loading, which was on account of the understanding with the various railroad companies, through the suppliers of coal at tide water, that all government colliers and vessels chartered on account of the Government should have precedence in loading over all other crafts waiting for cargo.”
Notwithstanding this explanation the accounting officers of the Treasury Department refused to allow the claim in this case, on the ground that the language employed in the contract could not be construed as an agreement on the part of the United States to provide “ government dispatch ” in the loading of these vessels. In the case of Higginson v. Gray (80 Mass., 165, 170) the court laid down the following rule: “ ‘ It is understood,’ in the ordinary use of that phrase when it is adopted in a written contract, has the same force with ‘ it is agreed.’ ”
This contention by the defendants is not properly applied in the case at bar, because it is apparent 'that the agents of the United States as well as the charter parties entered upon the contract believing that “ government dispatch ” in loading would be accorded to the vessels furnished by them and that their vessels would not be required “ to take their turn in loading ” along with other vessels not owned or chartered by the Government, and that they would not be required to await their turn in loading with commercial vessels non-chartered by the United- States Government at said port. As was said in Ladd v. Ladd (8 Howard, 10, 28), “ By every sound rule of construction an instrument should be interpreted by the context so as, if possible, to give a sensible meaning and effect to all its provisions.” Therefore, if the words “ it being understood ” are given any other meaning than “ it is agreed,” in the connection in which they are therein used, would render them utterly without effect in the contract and would practically nullify the same.
*568 Moreover, it is shown by the findings that the Bureau of Equipment intended by the contract to promise and guarantee. “ government dispatch.” The intention of the parties should therefore control. In Bradley v. Packet Co. (13 Peters, 97) it was held that—
“It is a principle recognized and acted upon by all courts of justice as a cardinal rule in the conntruction of all contracts that the intention of the parties is to be inquired into, and, if not forbidden by law, is to be effectuated.” (Scrutton on Charter Parties, 9, and cases there cited.)
Furthermore, it is shown by Finding VI that the Bureau of Equipment of the Navy Department had every reason to regard the custom of “ government dispatch ” for government vessels and those chartered by it as firmly established, and that there was, therefore, every reason to believe that there was absolute justification for its promise to guarantee “ government dispatch ” in loading the vessels furnished by it at Newport News under this contract, the point where these two vessels were to be loaded. The construction to be given to charters and bills of lading is not an unnecessarily strict one, but such an one as with reference to the context and the object of the contract will best effectuate the obvious and expressed intent of the parties. (Dimech v. Corlett (1858), 12 Moore, P. C., 199, 224.) The construction of charter parties and bills of lading must be governed by the law by which it appears from all the circumstances that the parties intended to be bound. (Chartered Bank v. Netherlands Company (1883), Q. B. D., 521, 529, 540.)
It is well settled that where no definite time is fixed in the charter party in which a vessel must be loaded the law will presume that it was the intention of the parties that the vessel must be loaded within a reasonable time or pay damages for its detention. (Donnell v. Amoskeag Manufacturing Co., 118 Fed. R., 10, 12; 9 Amer. & Eng. Ency., 2d ed., 222, and cases there cited.) It is not disputed in the case at bar that the lay days allowed by the charter parties were ample in which to load the vessels in controversy, and hence the delay in loading must be considered as unreasonable, and that such unnecessary delay is just cause for damage. (Scrutton on Charter Parties, 61, and cases there cited.)
*569 In Baldwin v. Sullivan Timber Co. (20 N. Y. Supp., 496), which case was based on a charter party which made it the duty of the charterer to bring the cargo to the vessel and load it on board, provision was made for demurrage in case of delay in bringing the cargo to the vessel, but ivas silent as to delays in loading. A delay occurred in loading and suit was brought for damage for the detention, but no proof was offered other than the rate of demurrage provided in the Charter party for delay in bringing the cargo to the vessel. The court decided that this was sufficient proof of the damage suffered by the owner on account of delay in loading. This case is practically the same as the case at bar.
2. The next question arising in the case is, Are the defendants liable for the delay occasioned by the negligence of the Chesapeake and Ohio Coal Agency Company and the Chesapeake and Ohio Railway Company to give the schooners of the charter parties “ government dispatch ” in loading? The defendants having promised such dispatch (as shown by the findings of fact), which was accepted in good faith by the claimants, and the same being refused by either the Chesapeake and Ohio Coal Agency Company or the Chesapeake and Ohio Railway Company, which companies were their agents in the supply of coal at Newport News, the defendants thereby became liable for the delay complained of in this case. (Peck v. United States, 152 Fed. R., 524.)
"A person professing to act as agent will bind his alleged principal by a charter party if that principal has (1) given him express authority to make such a contract, (2) placed him in a position of implied authority or held him out as having'such authority, and (3) afterwards ratified the contract purporting to be made on his behalf.” (Scrutton on Charter Parties, 24.)
In the case at bar the suppliers of the coal were the agents of the Government, and the Government, therefore, became responsible for their acts. On this point the court in Peck’s case (sufra), said:
“ In the absence of some agreement to the contrary between owner and charterer, or some evidence showing con *570 trary intent, the party who is to load the vessel will be deemed the agent of the charterer.”
Our decision is that inasmuch as there was no delay in unloading either of the vessels at Guantanamo, Cuba, no damages can be allowed. Nothing can be allowed for delay in loading the schooner Barrett, because she received her cargo within the lay period provided by the charter parties. An allowance of ten days is made for the schooner Haslcett, she having been delayed that period in addition to the six days provided by the charter parties for loading. Judgment is therefore awarded against the United States at the rate of j 6 cents per ton, which amounts to $1,498.20.
Howry, J., took no part in the hearing and disposition of this case.