**OKLAHOMA GAS AND ELECTRIC COMPANY, a corporation, Appellee,**

v.

**PINKERTON'S INC., Appellant.**

No. 62558.

Supreme Court of Oklahoma.

Sept. 16, 1986.

As Corrected Oct. 1, 1986.

Rehearing Denied Sept. 23, 1987.

Diane Goldschmidt, Robert D. Stewart, Jr., Oklahoma City, for appellee.

Elizabeth R. Brokaw, King, Roberts & Beeler, Oklahoma City, for appellant.

SUMMERS, Justice.

The question: Is a defendant who furnishes a security guard to protect the property of a landowner liable to the landowner for losses resulting from theft by the security guard while on the job? Our answer: Yes.

The facts are undisputed. OG & E contracted with Pinkerton's for security guards for protection of its property at its Post Road facility. To carry out its part Pinkerton's assigned its employee, one Ritter, to guard the property between 4:15 P.M. and midnight, six days a week. In November of 1981 Mr. Ritter was caught stealing copper wire belonging to OG & E and stored at its Post Road location. In his confession the guard admitted he had been stealing copper wire from the grounds he had been assigned to guard since 1977, and that he did so on working hours, when he was otherwise on duty.

While Ritter was prosecuted criminally OG & E filed this civil action against Pinkerton's Inc. to recover the value of the stolen copper wire. Plaintiff moved for summary judgment on the undisputed facts. Both parties stipulated the value of the wire taken, and therefore the damages if recoverable, to be $110,849.00. The sole question of liability was resolved by the trial court in OG & E's favor, and by a finding that the guard was acting within the course and scope of his employment when he stole the wire. On appeal the Court of Appeals, Division No. 3, by a 2–1 opinion reversed the trial court's finding, concluding that under the requirements of *Ada-Konawa Bridge v. Cargo,* 163 Okl. 122, 21 P.2d 1 (1933) the employee's theft as a matter of law was not within the course and scope of his employment. We have granted certiorari to review the matter.

In its petition for certiorari OG & E, perhaps recognizing sound reasoning in the Court of Appeals opinion, suggests that the trial court came to the right result even if not on the theory of "scope of employment"; that breach of contract was the ultimate issue and that defendant breached its obligation to guard the property against theft, irrespective of whether the employee was within the scope of his employment. The record informs us that this theory was tendered, albeit obliquely, in the briefs both at the trial level and on appeal. We are therefore obliged to examine this contention, for we have said that "the correct decision arrived at on the basis of wrong reasons or an incorrect theory will not be reversed." *Atlantic Richfield Co. v. State,* 659 P.2d 930, 934 (Okl.1983); *State v. Landess,* 293 P.2d 574, 577 (Okl.1955).

Let us for the moment set aside our concern with the doctrine of *respondeat superior,* and whether the guard was acting within the scope of his employment, and view the suit as one for simple breach of contract.

OG & E contracted for the safekeeping of its property, but suffered its loss. Is there a defense? Pinkerton's argues that the theft of the property invokes the defense known as supervening impossibility,[1] as recognized by this court in *Kansas, Oklahoma and Gulf Ry. v. Grand Lake Grain Co.,* 434 P.2d 153 (Okl.1967). In that case the railroad company leased right of way to the grain elevator company with mutual promises that the grain company would use the railroad to ship grain. When it was learned the proposed construction of a dam would put 19 nearby miles of the railroad under water the Interstate Commerce Commission allowed the railroad to abandon the line to the elevator by reason of impossibility of operation. The grain company sued for breach of contract, citing the increased cost of shipping by truck. This court, relying on *Cosden Oil & Gas Co. v. Moss,* 131 Okl. 49, 267 P. 855 (1928) and quoting from *Tulsa Opera House Co. v. Mitchell,* 165 Okl. 61, 24 P.2d 997 (1933) held:

> "Where parties enter into a contract on the assumption that some particular thing essential to its performance will continue to exist and be available for the purpose and neither agrees to be responsible for its continued existence and availability, the contract must be regarded as subject to an implied condition that, if before the time for performance and without the default of either party the particular thing ceases to exist and be available for the purpose, the contract shall be dissolved and the parties excused from performing it." *Kansas, Oklahoma & G. Ry. Co. v. Grand Lake Grain Co.,* supra at 158, 159.

This defense is known as the doctrine of supervening impossibility of performance,[2]

---

1. Pinkerton's also argues that the 'hold harmless' clause in the contract shows an intent that Pinkerton's only indemnify OG & E for loss occasioned by the 'negligence' of Pinkerton's employee. We reject the notion that this shows affirmative intent by OG & E to absolve Pinkerton's of responsibility for wilful theft by their employee assigned to guard the property. Common sense tells us the contract would never have been consummated if Pinkerton's had attempted to expressly disclaim responsibility for larceny by its own employees.

2. The doctrine was established in the early English case of *Taylor v. Caldwell,* 3 Best & S. 826, ameliorating the harsh rule imposed by the still

and it was held available to the defendant railroad company in the suit by the grain company.

▪ A distinction, however, has been drawn between objective and subjective impossibility. *Corbin on Contracts*, 1962 Ed. Vol. 6, § 1332, explains that objective impossibility exists when the promised performance could not be done by anybody (as in the *Kansas, Oklahoma & G. Ry. Co. v. Grand Lake Grain Co.* case), whereas subjective impossibility is the personal inability of a promisor to do what he promised. The duty of a promisor is not discharged by the mere fact that supervening events deprived him of the ability to perform, if they are not such as to deprive other persons similarly situated of the ability to so perform. *Western Drug Supply & Specialty Co v. Bd. of Administration*, 187 P. 701 (Kan. 1920); *Corbin*, supra, P. 361. The risk of such inability must rest on the promisor, absent express provision to the contrary. Thus according to *Corbin:*

> "A contractor is not discharged from duty ... by reason of the fact that his nonperformance was caused by the inefficiency of his servants and employees, however great was his own care in selecting them and however reasonable his reliance upon them. The same result is reached even though the non-performance was caused by the illness, insanity, or death of an employee or agent, except where the agreed performance is the personal service of the particular employee or agent." Supra, p. 365.

In *Higginson v. Weld*, 80 Mass. 165 (1859) the promise to transport a cargo from Calcutta was not discharged by the fact that the Captain of defendant's ship went insane and did not stop at Calcutta.

▪ The contract in question provided that OG & E would pay for, and Pinkerton's, Inc., would provide, property protection at various locations including the one in question. The contract required use of a watchman or security guard, who was required to perform in accordance with "ac-

ceptable security practices and standards". (Defendants answers to interrogatories No. 4, 5) This, according to Pinkerton's, meant to "provide a deterrent against theft and vandalism." (Defendant's answer to interrogatory No. 5(a)) Generally there is implied in every contract for work or service a duty to perform it skillfully, carefully, diligently and in a workmanlike manner. *Keel v. Titan Constr. Co.*, 639 P.2d 1228 (Okl.1981).

▪ Even so, larceny could amount to a defense of supervening impossibility if the larceny was committed with such force or sophistication that no security guard could reasonably have been expected to prevent it. Here, however, all Pinkerton's guard had to do to prevent the theft was exactly what the job called for—watch the property, and, of course, not steal it.

A case pointing up the distinction between liability in tort and contract under similar circumstances is *Lou-Con, Inc. v. Gulf Bldg. Services, Inc.*, 287 So.2d 192 (La.App.1974). Lou-Con owned a building and needed a janitor. Gulf provided the janitor, but, unfortunately, one who stole Lou-Con's money and then burned the building to cover it up. Lou-Con sued Gulf in tort and in contract. The court disallowed the tort claim—the crimes were not within the scope of employment—but allowed recovery in contract because the contract itself allowed recovery for damages "arising out of" the contract. The *Lou-Con* court quoted from Restatement of Agency 2nd § 214, Comment:a:

> "Unless one has directed a specified tortious act or result, or has been negligent, he is normally not responsible for the conduct of others, except that of his servants or agents acting within the scope of their employment. *By contract, however, or by entering into certain relations with others, a person may become responsible for harm caused to them by the conduct of his agents or servants not within the scope of employment; the extent of this liability depends upon the duty assumed."* (Emphasis added)

---

earlier case of *Paradise v. Jane*, (1647) Aleyn 26. The *Kansas, Oklahoma and G. Ry. Co. v. Grand Lake Grain Co.* court also recognized that im-

practicability (relocation of the line to the east was possible though "totally impracticable") may be equated with impossibility.

More to the point for our case is Restatement of Agency 2d, § 214, itself:

"A master or other principal who is under a duty to provide protection for or to have care used to protect others or their property and who confides the performance of such duty to a servant or other person is subject to liability to such other persons for harm caused to them by the failure of such agent to perform the duty."

In *Lou-Con* the contractual liability was imposed by the "hold harmless" provision, because the employee's acts in themselves did not breach Gulf's contracted duty to provide janitorial services. Here the hold harmless clause need not be invoked to find contractual responsibility if OG & E's loss was occasioned by Pinkerton's contractual failure to prevent theft. We find that it was, and that Pinkerton's must stand liable as a matter of law, not for the felonies of its employee, but for its failure to provide the protection contracted for. OG & E contracted for a watchman; it was furnished a thief. Care in hiring is not an issue in this contractual aspect of the dispute. (*Corbin*, P. 365 supra)

We therefore hold that when the purpose of a contract is protection of property from theft, the contracting party is liable to the owner for theft by the contracting party's employee if the theft is committed while the employee is otherwise on duty to guard the property. Inquiry in this case need not be pursued as to whether Pinkerton's guard was acting within the scope of his employment.

The opinion of the Court of Appeals, Division No. 3, is vacated, certiorari having previously been granted, and the judgment of the trial court in favor of plaintiff and against the defendant is affirmed in the amount so stated, but for the reasons expressed herein.

All Justices concur.