OSCN Found Document:MENG v. RAHIMI

 

 
 

 
 MENG v. RAHIMI
2022 OK 11
505 P.3d 926
Case Number: 119051; Consol. w/119196
Decided: 02/01/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 11, 505 P.3d 926

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

Â 

Â 

LI MENG, Defendant/Appellant,
v.
MOHAMMAD RAHIMI AND TAHEREH DINPAJOOH, Plaintiffs/Appellees.

ON WRIT OF CERTIORARI TO REVIEW INTERLOCUTORY ORDER

Â¶0 Tenant petitioned for certiorari review of a certified interlocutory order urging that the trial court erred in failing to consider the affirmative defense of impracticability or frustration of purpose to excuse the nonpayment of rent for a parcel of commercial property and awarding past due rent and possession to Landlords. The trial court did not allow Tenant to present evidence in support of her affirmative defense. The trial court entered an interim Order awarding to the Landlords possession of the premises and five months of past due rent in the amount of $6,400 and reserved issues relating to damages and liability for ongoing rent for future consideration. The trial court certified the judgment as an interlocutory order for immediate appeal. We hold that the trial court erred by not allowing Tenant to present evidence relating to her affirmative defense of impracticability or frustration of purpose.

PETITION FOR CERTIORARI TO REVIEW A CERTIFIED INTERLOCUTORY ORDER PREVIOUSLY GRANTED; ORDER OF THE DISTRICT COURT REVERSED; AND CAUSE REMANDED FOR PROCEEDINGS CONSISTENT WITH OPINION.

James S. Matthews, Jr., Oklahoma City, Oklahoma, for Petitioner/Appellant,

Mohammad Rahimi, Respondent/Appellee, Pro Se,

Tahereh Dinpajooh, Respondent/Appellee, Pro Se.

OPINION

Edmondson, J.:

Â¶1 This certified interlocutory order presents multiple issues, but central to the resolution is whether a Tenant should be allowed to present evidence of the affirmative defense of frustration of purpose and impracticability as a defense to a forcible entry and detainer action to excuse a commercial tenant's nonpayment of rent during the period of time of alleged impracticability. We hold under these limited facts, Tenant should have been allowed the opportunity to present evidence in support of her defense. The trial court erred when it did not allow Tenant to present evidence in support of the affirmative defense.[1]

Â 

FACTUAL AND PROCEDURAL BACKGROUND

Â 

Â¶2 Li Meng ("Tenant") leased a commercial property from the Plaintiffs, Mohammad Rahimi and Tahereh Dinpajooh ("Landlords") in August, 2019 for the sole purpose of operating a massage business for a two year term.[2] The parties specifically agreed in the written lease that Meng's use of the commercial space was for the sole purpose of conducting a massage business and Meng was prohibited from using the space for any other purpose.[3] The Landlords prohibited any use of the leased premises which could endanger life.[4]

Â¶3 The Landlords noted that even though Tenant was prohibited from any use of the premises which violated public law or governmental rule, the lease specified there would be no abatement of rent even if there was a loss of business arising from some future law. [5] Landlords argued that Meng's obligation to pay rent was not excused because of these lease provisions.

Â¶4 In January, 2020, approximately five months after the parties executed the lease, the first case of the COVID-19 virus was reported within the United States and soon thereafter in Oklahoma. In March, the Oklahoma governor declared a state of emergency due to COVID-19 and businesses that were not part of critical infrastructure were ordered to close for a period of time.

Â¶5 Meng stated that she closed the business on March 19, 2020 after she and her sole employee became ill with symptoms of the COVID-19 virus.[6] Meng did not pay rent after March, 2020, and she never re-opened her business.

Â¶6 On June 15, 2020, Landlords filed this action against the Tenant for past due rent and eviction. At the hearing on August 12, 2020, Tenant argued that rent was not due from April through August because performance of the contract had become impossible in light of the public health risk with massage which temporarily excused the payment of rent under the doctrine of frustration of purpose or impracticability. Counsel for Tenant announced there were witnesses available to testify at the hearing in support of this affirmative defense. Landlords argued that they were entitled to possession and unpaid rent and asked the trial court to award rent and for counterclaims or offsets to be determined in a separate action filed by Meng seeking declaratory relief. The court stated that the defense of impracticability was not a legitimate excuse for the nonpayment of rent and did not allow Meng to present any evidence in support of this defense. The trial court awarded Landlords $6,400 in past due rent and granted them possession.

Â¶7 After the trial court certified its order for discretionary interlocutory appellate review pursuant to 12 O.S. 2011 Â§952(b)(3), Meng filed a Petition for Certiorari seeking certiorari review of the certified interlocutory order. We granted certiorari. Briefing was completed by the parties on June 28, 2021. Consolidated within this matter by order of this Court, is a separate appeal filed by Meng asserting the trial court erred by awarding attorney fees to Landlords as prevailing party. [7]

Â 

STANDARD OF REVIEW

Â 

Â¶8 The parties agree that the standard for appellate review in this matter is de novo, as the principal issue for review is whether the trial court erred in failing to permit Tenant the opportunity to present evidence of her affirmative defense of impracticability or frustration of purpose. In exercising our general appellate jurisdiction, we review issues that present pure questions of law de novo. Lincoln Farm, L.L.C. v. Oppliger, 2013 OK 85, Â¶ 12, 315 P.3d 971, 975.

LEGAL ANALYSIS

Â¶9 Parties enter into contracts to provide a degree of certainty in their business transactions. Krug v. Helmerich & Payne, Inc., 2013 OK 104, Â¶ 35, 320 P.3d 1012, 1022. An essential principle of contract law is to give force and effect to the consensual formation of relationships and bargained-for-duties within the parties' agreement. Id. This Court cannot make a better contract for the parties than what they have negotiated. Id.; See also, Berry and Berry Acquisitions, LLC v. BFN Properties, LLC, 2018 OK 27, Â¶ 13, 416 P.3d 1061, 1068.

Â¶10 Meng's only defense to nonpayment of rent was that the failure to pay was excused under the recognized affirmative defense of impossibility, impracticability or frustration of purpose of contract. Meng argued that because her nonpayment was excused by this affirmative defense, Landlords were not entitled to unpaid rent from April through July, 2020. Meng announced she had witnesses available to testify and other evidence available to support her defense. The trial court refused Meng the opportunity to present her defense. On appeal, Meng noted that this theory has been recognized by this Court as a defense to the nonperformance of a contract caused by a supervening impossibility. Oklahoma Ry Co. v. Grand Lake Grain Co., 1967 OK 170, 434 P.2d 153. Meng urged that at the time the commercial lease was executed, the parties implicitly assumed there would not be a worldwide pandemic which could render the use of the commercial property for providing massage, a use which may endanger life and be a threat to public health and safety.

Â¶11 Landlords argued that the state and federal agencies put a moratorium on personal residences and payments of rent due to the pandemic, but there was no such relief for commercial properties. Landlords also urged that Meng could have continued her business as Oklahoma personal care service businesses were allowed to reopen in late April, 2020.

Â¶12 This Court has recognized the doctrine of impossibility to excuse nonperformance by a party to a contract under limited circumstances. Cosden Oil & Gas Co. v. Moss, 1928 OK 352, 267 P. 855; See also Oklahoma Gas and Elec. Co. v. Pinkerton's Inc., 1986 OK 61, 742 P.2d 546. This rule is typically limited to "the situation where neither party is at fault and neither has assumed the risk." Kansas, Oklahoma & Gulf. Ry. Co. v. Grand Lake Grain Co., 1967 OK 170, Â¶ 18, 434 P.2d 153, 157. Citing an earlier edition of the Restatement of the Law of Contracts, we noted that impossibility "means not only strict impossibility but impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved." Id. Â¶ 21, 434 P.2d at 158. Similar to the matter before us, the trial court in Grand Lake Grain refused defendant's request to introduce evidence supporting its only defense to the litigation, the affirmative defense of impossibility. The trial court's ruling precluded defendant's right to defend asserted claims. We held there as we do in the instant matter, the court erred as a matter of law for not allowing the defendant to present evidence of the defense.

Â¶13 Because contractual responsibilities are essential to predictability for the parties, this defense has many inherent safeguards. The circumstance giving rise to the conditions of impossibility must have not been foreseeable or anticipated by the parties, and the person unable to perform must not be at fault. Id. at Â¶20, 434 P.2d at 158. Even if it can be established that the circumstance was neither foreseeable or anticipated by the parties, impossibility of performance is further restricted, and a distinction is drawn between objective and subjective impossibility. Pinkerton's supra. at Â¶ 8, 742 P.2d at 548. Objective impossibility may excuse performance of a contract, but a party must prove that performance could not be done by anybody. Id. To the contrary, subjective impossibility does not excuse performance and arises when the failure to perform arises from the personal inability of a promisor to perform.

Â¶14 This forcible entry and detainer action was filed in small claims court and is governed by the Small Claims Procedure Act, 12 O.S.2011 Â§Â§ 1751 -- 1773. Although the object of this Act is the efficient and prompt disposition of claims and defenses,[8] the Legislature did not intend to do away with fundamental due process and the right to defend an action. Johnson v. Scott, 1985 OK 50, Â¶ 12, 702 P.2d 56, 58. Section 1761 of this Act grants each party the right to present evidence and witnesses before a court. Id.

Â¶15 We offer no opinion on Meng's ability to establish the requirements of her defense, and for what length of time, if any, said impossibility existed. Because supervening impossibility is a recognized affirmative defense to nonperformance of a contract, Meng is entitled to present evidence in support of it. The trial court erred in not allowing this testimony. Its interlocutory order awarding $6,400 is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Â¶16 Darby, C.J., Kauger, Edmondson, Combs, and Gurich, JJ., concur;

Â¶17 Kane, V.C.J. (by separate writing), concurs in result;

Â¶18 Winchester (by separate writing), Rowe, and Kuehn, JJ., dissent.

FOOTNOTES

[1] ROA, Doc. #23, Hr'g. Tr., Aug. 12, 2020.

[2] Commercial leases are not regulated by the Oklahoma Residential Landlord Tenant Act. 41 O.S. 2011 Â§ 51.

[3] ROA, p. 56, Doc. #9, Am. Sp. Appearance and Mot. to Dismiss, ex. A at 73.

[4] Id.

[5] Id. at 74.

[6] Pet. for Cert., Nov. 12, 2020.

[7] Meng's companion case asserting error in the granting of attorney fees to Landlords, 119,196 was consolidated with the instant matter, 119,051. Meng did not raise any issue regarding attorney fees in her brief in chief. This issue will not be considered by this Court. Sup. Ct. Rules 1.11 (k) and 1.40 (c).

[8] Patterson v. Beall, 2000 OK 92, 19 P.3d 839.

Â 

Â 

KANE, V.C.J., concurring in result:

Â¶1 While Plaintiffs may correctly foretell that the final result of this litigation is that the tenant has no viable defense, I concur, procedurally, to remand this matter to the trial court to complete the evidence before the issue is finally resolved.

Â¶2 This action was filed in small claims court, which has limited jurisdiction and limited pretrial procedure. Discovery is not allowed. See 12 O.S.2011 Â§ 1760. No pretrial motions are allowed, except for motions to transfer the small claims action to the regular civil docket. See 12 O.S.Supp.2017 Â§ 1757; Patterson v. Beall, 2000 OK 92, Â¶Â¶ 11, 24, 19 P.3d 839, 843, 845. In the present case, the Defendant interposed a written motion to dismiss, and the Plaintiffs submitted a response. On the strength of the argument of the Plaintiffs, the Court entered judgment for the Plaintiffs without taking evidence.

Â¶3 Because I believe that it was procedurally improper to take up the motion prior to submission of the case, I would remand the matter to the trial court for submission of the evidence, without any further analysis at this point.

Â 

Â 

Winchester, J., with whom Kuehn, J. joins, dissenting:

Â¶1 The Court has long refused to rewrite contracts. The majority recognizes as much when it reiterates the long-standing point that a court cannot put the parties in a better position than what they negotiated in the contract. Krug v. Helmerich & Payne, Inc., 2013 OK 104, Â¶ 35, 320 P.3d 1012, 1022. Yet the Court ignores precedent and rewrites the contract to the detriment of Appellees Mohammad Rahimi and Tahereh Dinpajooh (Landlords).

Â¶2 The district court correctly determined that the affirmative defenses of frustration of purpose, impracticability, and impossibility did not apply as a matter of law due to the controlling language in the parties' commercial lease agreement. The parties entered into an Oklahoma Commercial Lease Agreement, which did not allow abatement for rent in circumstances such as a pandemic:

6.2 EFFECTS ON RENTS. TENANT shall have no abatement, diminution, or reduction of the Rents for any inconvenience, interruption, cessation or loss of business or otherwise caused, directly or indirectly, by any present or future Public Law or by curtailment of labor or materials, or by war, civil commotion, strikes, or riots, or any matter of things resulting therefrom, or by other causes beyond the control of the LANDLORD. 

(emphasis added).

Â¶3 The parties contracted for Appellant Li Meng (Tenant) to pay rent during any interruption or loss of business if the loss was caused by something beyond the control of Landlords. The pandemic was beyond the control of Landlords. None of the affirmative defenses raised by Tenant are applicable when there was language in the commercial lease that controlled in what scenarios performance was discharged. See Restatement (Second) of Contracts Â§Â§ 261, 263, 265 (Am. Law Inst. 1981) (stating performance is discharged under the doctrines of impossibility, frustration of purpose, or impracticability "unless the language or circumstance indicate the contrary"). Per the language of the commercial lease, Tenant was not absolved of her obligation to pay rent if governmental pandemic orders forced Tenant to shut down her business or if a pandemic market decline caused her to lose business. Clause 6.2 of the commercial lease ends the inquiry. The affirmative defenses are not applicable as a matter of law, and there is no reason to remand this case back to district court to allow evidence of these extra-contractual theories.

Â¶4 It is a fact that the market decline during the pandemic was a widespread issue, impacting conceivably every business. Yet in Oklahoma, exactly one month after Governor Kevin Stitt's temporary executive order closing all non-essential businesses, personal care businesses (like Tenant's) could reopen.[1] The majority of hair salons, barbershops, spas, nail salons, and other personal care businesses reopened in Oklahoma and provided services with safety protocols in place. Tenant chose to keep her business closed and continued to not pay rent. Landlords waited until June 15th, almost two months after Tenant chose not to reopen her business, to file a forcible entry and detainer action. Tenant was permitted to run her business during those two months but chose not to operate her business to generate income. Tenant continued to remain closed and not pay rent until the trial on August 12th, almost four months after she could reopen her business.

Â¶5 To permit these affirmative defenses to apply to a commercial tenant here, one who chose to not reopen her business and, in turn, stopped paying rent, would raise countless questions: would it apply to every commercial tenant? If not, what are the criteria to qualify for such relief? What about commercial tenants operating during the pandemic but still losing business? Granting relief to Tenant in a make-shift fashion when she was able to conduct business would yield inconsistent and unfair results for all other commercial tenants and landlords. While I empathize with Tenant's plight, I cannot ignore the language in the parties' commercial lease or the fact that Landlords had specific obligations from their ownership of the building that they had to meet despite Tenant refusing to operate her business and pay rent. For these reasons, I dissent.

FOOTNOTES

[1] See Open Up and Recover Safely, A Three-phased Approach to Open Oklahoma's Economy 2 (April 22, 2020), available at https://www.okcommerce.gov/wp-content/uploads/Open-Up-and-Recover-Safely-Plan.pdf.

Â